[Civ. No. 10780.    Third Dist.    June 9, 1964.]

YREKA UNION HIGH SCHOOL DISTRICT OF SIS-
KIYOU COUNTY, Plaintiff and Appellant, v. SISKI-
YOU UNION HIGH SCHOOL DISTRICT OF SISKI-
YOU COUNTY et al., Defendants and Respondents.

Richard H. Perry for Plaintiff and Appellant.

Daniel S. Carlton, Jere E. Hurley, Carr, Kennedy & Asbill and Richard J. Asbill for Defendants and Respondents.

FRIEDMAN, J.—Plaintiff Yreka Union High School District brought this action seeking declaratory relief and establishment of a trust over a portion of the general fund of defendant Siskiyou Union High School District. Plaintiff appeals from a judgment declaring that it has no right to any of the contested money. The facts are not in dispute. The case presents a question of law involving application of former section 2313 of the Education Code.[1]

In 1957 a portion of the Siskiyou district withdrew and was formed into the Tulelake Joint Union High School District. Litigation arose between the two districts over the division of assets. On June 30, 1958, Tulelake secured a restraining order to prevent Siskiyou from doing any act which "may tend to dissipate the funds which should be appropri-

---

[1]As amended by Statutes of 1959, chapter 1612, the full text of Education Code § 2313 read: "Whenever any high school district is formed pursuant to this article (commencing at section 2301), all real and personal property of the union high school district which is situated within the boundaries of the newly formed high school district shall become the property of the newly formed district. Within 30 days after the newly formed high school district becomes effective for all purposes, the county auditor shall determine *the balance of the funds standing to the credit of the general fund* of the union high school district from which the new district was formed as of the effective date of the formation of the new district. Thereupon he shall transfer from the general fund of the union high school district to the credit of the general fund of the newly formed district an amount which is in the same proportion as the ratio of the assessed valuation of the territory included in the newly formed district bears to the total assessed valuation of the union high school district immediately prior to the formation of the new district for all purposes." (Italics supplied)

ately apportioned to the General Fund of the petitioner district. . . ." Upon receiving notice of the restraining order the auditor-controller of the county ordered that $54,518.64 be withdrawn from Siskiyou's general fund and placed in a "trust fund." Accordingly, the amount was deducted from the general fund account of the Siskiyou district and credited to a new "Siskiyou High and Tulelake High Trust Fund" in the ledger. Tulelake and Siskiyou litigated the issue. A judgment for Siskiyou was entered in January 1961 which became final. In May 1961 the trust fund account was closed and the amount of $54,518.64 was credited back to Siskiyou's general fund.

The judgment in the Tulelake litigation read, in part, as follows: ". . . the defendant Siskiyou Joint Union High School District is the owner of and entitled to the sole possession of all funds in the general fund to the credit of such District in the office of the County Treasurer of the County of Siskiyou, State of California, at all the times mentioned in the complaint herein and on June 30, 1957, and thereafter, and that neither the plaintiff nor its inhabitants, taxpayers, nor any of the territory embraced within its boundaries has any right, title or interest in and to any of said funds and they, and each of them, are not entitled to any share or portion of said funds and are not entitled to a proration or apportionment of such funds."

Meanwhile, another portion of the Siskiyou district withdrew and, effective July 1, 1960, became the Yreka Union High School District. At that time Education Code section 2313 provided for a division of the general fund between the two districts in proportion to their respective assessed valuations. (See footnote 1, *supra*.) Seeking to comply with the statute, the county auditor made a determination of the percentage of Siskiyou's general fund to be allocated to Yreka, based upon the comparative assessed valuations of the two districts. This percentage was then applied to the amount standing to the credit of Siskiyou's general fund on the county's books. The auditor, however, did not apportion to the Yreka district any part of the $54,518.64 standing to the credit of the "trust fund" created in connection with Tulelake litigation, taking the position that this sum was not a part of the general fund of the Siskiyou district on the effective date of Yreka's formation. This suit was then brought for $26,474.35, the amount of the fund claimed by Yreka.

Yreka takes the position that the $54,518.64 in the "trust fund" on July 1, 1960, was actually part of Siskiyou's general fund which must be included in the total sum available for distribution between the two districts. Siskiyou counters with an interpretation of the statutory words "balance of the funds standing to the credit of the general fund . . . as of the effective date. . . ." This language, Siskiyou contends, refers to the cash balance in the fiscal entity designated as general fund and available for transfer to the new district on the specified date; ergo, the sum in question was neither in nor credited to the general fund on that date. The trial court sustained Siskiyou's position, denying Yreka's entitlement to a share of the money.

We accept the position taken by the Yreka district and reverse the judgment. Siskiyou's interpretive argument assumes a valid withdrawal of money from its general fund in consequence of the judicial order made in the Tulelake litigation and the bookkeeping transfer directed by the county auditor. No such withdrawal occurred.

█ School districts are agencies of the state for the local operation of the state school system. █ A district is but the trustee of school property and funds, the state the beneficial owner. (*Hall* v. *City of Taft,* 47 Cal.2d 177, 181-182 [302 P.2d 574].) █ A school district is an agency of limited authority; it may exercise only those powers granted by statute. (*Pasadena School Dist.* v. *City of Pasadena,* 166 Cal. 7, 11 [134 P. 985, Ann. Cas. 1915B 1039, 47 L.R.A. N.S. 892]; *Paterson* v. *Board of Trustees,* 157 Cal.App.2d 811, 818 [321 P.2d 825]; *City of Oakland* v. *Oakland etc. Sch. Dist.,* 138 Cal.App.2d 406, 409 [291 P.2d 1001].)

Except for temporary clearing accounts in banks, all money received by school districts must be paid into the county treasury, to be placed to the credit of the proper district fund. (Ed. Code, §§ 17152-17204.) The Education Code recognizes certain "special" funds of school districts, none of which is involved here. Except as to money authorized by law for deposit in one of these special funds, all money received by the district or paid into the county treasury for the district's credit, must be deposited in the general fund of the district. (§ 17153.) Subject only to statutory exceptions, earmarking of money for special purposes must be accomplished by means of budgetary accounting methods, not by the establishment of special funds. (§ 17202.) █ The general fund of a school district may be defined as all district money

not deposited under statutory authority in a special fund recognized by law. (Cf. Gov. Code, § 16300.) A quasi-official publication, no longer current, described it as the "fund that is available for any legally authorized purpose." (Cal. School Accounting Manual, Dept. of Education Bulletin, vol. XX, No. 2 (March 1951) p. 73; see also vol. XXX, No. 11 (October 1961) p. 28.)

Each school district must adopt a fiscal year budget. (Ed. Code, §§ 20601-20651.) The total amount budgeted is the maximum amount which may be expended. (§ 20951.) Income in excess of expenditures must be placed in the district's general reserve and may not be appropriated to augment the current budget except under a fixed procedure; otherwise it must be carried over as a credit in the ensuing fiscal year budget. (§ 21001.)

School funds in the county treasury retain their character as property of the school district. (*Pomona City Sch. Dist.* v. *Payne,* 9 Cal.App.2d 510, 516 [50 P.2d 822].) The auditor of the county is ex officio disbursing officer for the school district. (Ed. Code, § 21109; *Pomona City Sch. Dist.* v. *Payne, supra,* 9 Cal.App.2d at p. 514; *Nielsen* v. *Richards,* 69 Cal.App. 533, 546-547 [232 P. 480].) Expenditure procedures are established by Education Code sections 21101 through 21115. Disbursements are initiated by a requisition originating with the district board, approved by the county superintendent of schools as a "legally authorized expense" and transmitted to the county auditor, who then draws a warrant on the county treasurer. Section 21101 declares: "Except as otherwise provided in this code, money shall be paid from the funds of any school district for the payment of the expenses of the district, only as provided in ... [§§ 21101-21115]." Withdrawals from the district's general fund may also occur by transfer to cafeteria and child care center funds. (§ 17201.)

Thus the Education Code establishes fixed circumstances under which general fund withdrawals may be accomplished. Expenditure pursuant to budgetary appropriation and authorized transfer to statutory special funds appear to be the only means of charging the general fund. No act of the county auditor, no bookkeeping transfer, can alter the character of school funds or diminish their amount unless in consequence of statute or procedures authorized by statute.

The mode specified by statute was the measure of

the Siskiyou County auditor's power to make withdrawals from the general fund of the Siskiyou Union High School District. The auditor's bookkeeping entry, purportedly establishing a "trust fund" for the money tied up in the Tulelake litigation, could not and did not accomplish a lawful withdrawal of money from the district's general fund. The money was neither transferred nor expended pursuant to law. To be sure, it was held under judicial restraint and not available for district expenditure. Its status, however, as money "in" or "standing to the credit of" the general fund did not change. It had been part of the general fund before the restraining order, and neither the order nor the purported bookkeeping transfer changed that status.

Siskiyou contends that once the money was sequestered in the Tulelake litigation, it no longer stood to the "credit" of the general fund because its ultimate ownership was unknown; that, had Tulelake rather than Siskiyou been the successful claimant, no part of the money would have been available for distribution to the subsequently formed Yreka district. Possibly, had the lawsuit turned out the other way, Tulelake might have pursued any money actually divided between the Siskiyou and Yreka districts. We need not decide that abstract question, however. The pending litigation could not affect the general fund character of the disputed money. The restraining order was nothing but an in personam restriction upon expenditure, designed to preserve the status quo. Such a pendente lite arrangement does not achieve any change in the ownership or character of the affected money. (*Metropolitan Water Dist.* v. *Adams,* 32 Cal. 2d 620, 626 [197 P.2d 543].) The county auditor had no authority to transfer the money out of the general fund and the court could not, by its restraining order, create such a power. (*Paterson* v. *Board of Trustees, supra,* 157 Cal.App. 2d at p. 819.)

An *ad hominem* suggestion is that Yreka seeks a windfall, because Siskiyou would have spent the money on capital improvements had it not been tied up by the restraining order. There are several answers to this suggestion. In the first place, the trial court refused to make a finding regarding these suppositious expenditures. Secondly, the evidence shows that Siskiyou at all times had cash balances which might have been but were not appropriated for these capital outlays. Thirdly, the money had its origin, in part, with taxpayers now located in the Yreka district; theoretically, at

least, they would share proportionately in the benefit of any capital outlays; hence, pro rata distribution to their present school district represents no windfall at all.

The Yreka district also claims interest earned by the county from bank deposit of the sequestered money held in the county treasury. The county treasurer deposits money belonging to the county or, as in this case, in its custody, in banks at interest. ▆▆▆ A school district whose cash is included in commingled bank deposits of the county is entitled to interest accretions on its share of the deposits. (*Pomona City Sch. Dist.* v. *Payne, supra,* 9 Cal.App.2d 510; see also *Metropolitan Water Dist.* v. *Adams, supra,* 32 Cal.2d at pp. 629-630.) ▆▆▆ During the trial the Siskiyou County auditor testified that interest on county deposits during the applicable period "would average about 2½%" and that interest had not been allocated to the money sequestered in the Tulelake litigation. Interest earnings should therefore be added to the sum of $54,518.64 up to July 1, 1960, the date fixed by former Education Code section 2313 for division of funds between the Siskiyou and Yreka districts. Subsequent interest earnings should thereafter be credited to the allocated share of each of the two districts. The question of interest earnings on Yreka's share of the division does not lie between the two districts, but between the Yreka district and the county. Since the county treasurer and auditor are parties to this action, complete relief is available. Upon remand, the parties may stipulate or the trial court may entertain further proceedings to credit interest to Yreka at the precise interest rates earned by county deposits.

In meeting Yreka's claim for part of the $54,518.64, Siskiyou counterclaimed, seeking credit for a pro rata share of legal fees spent to protect the money in the Tulelake litigation. During the trial the parties stipulated that legal fees of $3,350 were reasonable and had, in fact, been paid by Siskiyou. Since the trial court denied recovery, it had no occasion to pass on the counterclaim. Our reversal necessitates its disposition. There is no evidence and no stipulation as to whether all or part of the $3,350 was paid out before or after July 1, 1960, the effective date of Yreka's formation. Any money paid out before that date was charged against funds otherwise available for division between the two districts, and Yreka has thus effectually shared in the expense. Siskiyou's payment of legal fees after July 1, 1960, would benefit the

funds received by Yreka without any corresponding expense to the latter. Under the latter circumstances Siskiyou's claim for partial reimbursement would have substance. The parties, however, have not discussed the theory underlying the counterclaim, and we do not care to anticipate the trial court or counsel in this regard.

The judgment is reversed and the cause remanded for proceedings not inconsistent with this opinion.

Pierce, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied July 1, 1964, and respondents' petition for a hearing by the Supreme Court was denied August 5, 1964.