[Civ. No. 24308.   First Dist., Div. Three.   Jan. 26, 1968.]

SAN CARLOS SCHOOL DISTRICT, Plaintiff and Appellant, v. STATE BOARD OF EDUCATION et al., Defendants and Respondents.

Rodney Robertson for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, Richard L. Mayers and Elizabeth Palmer, Deputy Attorneys General, for Defendants and Respondents.

SALSMAN, J.—Appellant San Carlos School District sought an injunction and a writ of mandate against respondent State Board of Education. The superior court sustained a

general demurrer to the complaint, refused leave to amend, and entered its judgment dismissing the action. We affirm.

Appellant's complaint, as amended, contained two counts. In the first count it sought (1) to enjoin a school district reorganization election scheduled for June 7, 1966; (2) to have the court declare the Unruh School Act (Stats. 1965, First Ex. Sess., 1964, ch. 132) unconstitutional; (3) to enjoin transfer of certain district funds to other districts for purposes of equalization; (4) to have the court declare the district reorganization a nullity if approved by the voters, and (5) to have the court enjoin all defendants from taking further steps to process the pending election.

The second count in the complaint asked for the writ of mandamus, and in effect charged the State Board of Education with an abuse of discretion in rejecting a locally formulated plan for school district reorganization and in submitting a plan devised by the State Board of Education to the electorate in lieu thereof.

The controversy stems from an attempt to consolidate and unify certain school districts in southern San Mateo County, which is part of a long-standing project to consolidate and unify school districts throughout the State of California. It is common knowledge that for many years, such attempts have been a source of great dispute in the Legislature, among the electorate, and in the courts.

The Sequoia Union High School District embraces a large area of southern San Mateo County. Eight elementary school districts are located within its boundaries. They are: Belmont, Redwood City, Woodside, Portola Valley, Las Lomitas, Menlo Park City, Ravenswood City, and the appellant San Carlos School District. Respondents' plan to unify these districts, creating one large unified school district for grades 1 through 12 within the boundaries of the present Sequoia Union High School District, prompted appellant to commence this lawsuit.

The Education Code contains detailed procedures for the formulation and approval of plans for school district unification and the submission of such plans to the electorate for approval or rejection. (See Ed. Code, § 3100, et seq.) Essentially, at the time this lawsuit was before the trial court, the statutory scheme permitted plans for unification to be formulated at the local level, within the districts affected by the plan. These local plans were then submitted to the State Board of Education, which had the power to approve or reject

them. Only a plan approved by the State Board could be submitted to the voters of an area proposed to be unified. If a plan was rejected by the State Board, a new plan had to be proposed.

The State Department of Education could also submit plans to the State Board of Education, based upon the Department's studies, research and information. The Board could approve the Department's plan if it believed the Department's plan superior to a local plan in furthering the Legislature's intentions with respect to the reorganization of school districts and the equalization of educational opportunities.

In the case we now consider, the San Mateo County Committee on School Reorganization recommended to the State Board of Education that Sequoia Union High School District be divided into three separate, unified school districts. (See Ed. Code, § 3201.) The local committee proposed that the Belmont and San Carlos School Districts be consolidated into one district; that the Redwood City School District be a separate district, and that the Las Lomitas, Menlo Park City, Portola Valley, Ravenswood City and Woodside districts be consolidated into a third district. This plan was submitted to the State Board of Education three times, and rejected each time. In rejecting the locally developed plan the State Board relied upon section 3100 of the Education Code,[1] which at that time expressed the legislative intent in this language: ''It is the further intent of the Legislature that in exercising the authority to approve master plans and plans and recommendations developed at the local level, *the State Board of Education consider the boundaries of existing high school districts as the minimum geographical base for the organization of individual unified school districts, to be deviated from only in exceptional situations.*'' (Italics ours.)

The State Department of Education then devised a plan for unification of the elementary school districts within Sequoia Union High School District. Its plan followed legislative intent. It proposed that the entire area within the high school district be unified into a single district covering grades 1 to 12. The Department's proposal was submitted to a specially constituted review committee (see former Ed. Code, § 3325)[2], together with the previously rejected three-district proposal.

---

[1] All section references hereafter given are to the Education Code, unless otherwise stated.

[2] Repealed Stats. 1967, ch. 1209, § 1.7, p. 2920.

After holding hearings. the review committee recommended the adoption of the Department's plan. The State Board accepted the recommendation, and, following statutory procedure, submitted the plan to the San Mateo County Superintendent of Schools, who called the election which appellant in this action sought to enjoin.

The superior court declined to enjoin the election. The election was held on June 7, 1966. The plan opposed by appellant, which had been proposed by the State Department of Education and approved by the State Board, was defeated throughout the whole of the Sequoia Union High School District and in each separate elementary school district within the high school district.

It is clear from the record that, by the time the superior court ruled on respondents' demurrer the questions whether to enjoin the election and whether to declare the unification a nullity if approved had become moot because of the electoral defeat of the State Department's plan. The election also rendered moot the question whether the State Board of Education abused its discretion in rejecting the three-district plan proposed three times by the County Committee on School Reorganization, because the plan approved in lieu of the rejected plan was voted down resoundingly at the polls. Moreover, the legislative guidelines upon which the State Board relied in rejecting the three-district plan were amended late in 1967, although the principal requirement that unified districts be no smaller than existing high school districts remained. (See Ed. Code, § 3100, amended Stats. 1967, ch. 1209, § 1, p. 2918, effective August 15, 1967.)

Three issues of law, however, remained. They were: (1) Whether appellant as a school district possessed sufficient standing to bring the action, (2) if it possessed such standing, whether it could complain of the possible transfer of some of its funds to other districts, and finally, (3) whether particular provisions of the Unruh School Act of 1964 were unconstitutional. In sustaining respondents' demurrer to the complaint the court resolved all of these issues against appellant.

The first issue we must meet is whether appellant, a school district, has standing to challenge the constitutionality of an act of the Legislature relating to such district affairs as the alteration of district boundaries and the disposition of district funds. We think the district had sufficient standing to bring this action.

Respondents argue that before a party may question the validity of a statute it must show that it has a constitutionally protected right and that its right is or will be adversely affected by the statute whose constitutionality is questioned. (See *Doremus* v. *Board of Education,* 342 U.S. 429 [96 L.Ed. 475, 72 S.Ct. 394]; *Tileston* v. *Ullman,* 318 U.S. 44 [87 L.Ed. 603, 63 S.Ct. 493]; *County of Ventura* v. *Southern Cal. Edison Co.,* 85 Cal.App.2d 529 [193 P.2d 512]; 11 Cal.Jur.2d, § 68, pp. 393-396.) In these cases, however, the unsuccessful plaintiffs were regarded as attempting to assert the alleged constitutional rights of others rather than their own. The plaintiffs in those cases failed to meet the requirement that they allege "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions. . . ." (*Baker* v. *Carr,* 369 U.S. 186, 204 [7 L.Ed.2d 663, 677, 82 S.Ct. 691].) Here, appellant urges that the Unruh School Act discriminates unreasonably between school districts; it is not asserting constitutional claims on behalf of others.

To hold that a school district has standing in these circumstances is not to say that a school district has a vested right in its own continued existence. Indeed, the legislative power over the creation, alteration and abolition of school districts is plenary. (*Worthington School Dist.* v. *Eureka School Dist.,* 173 Cal. 154, 156 [159 P. 437]; *Mountain View etc. School Dist.* v. *City Council,* 168 Cal.App.2d 89, 97 [335 P.2d 957].) It must, however, be exercised subject to constitutional limitations. (*Hall* v. *City of Taft,* 47 Cal.2d 177, 180-181 [302 P.2d 574]; *Pass School Dist.* v. *Hollywood etc. Dist.,* 156 Cal. 416, 418 [105 P. 122, 20 Ann. Cas. 87, 26 L.R.A. N.S. 485].) Thus, a school district has standing to assert that the means selected by the Legislature for its possible abolition are unconstitutional, although there is no ground upon which a school district may challenge the basic power of the Legislature to abolish it and create in its place a different legal entity of larger scope.

Although school districts have standing to challenge the constitutionality of acts of the Legislature vitally affecting them, the nature and scope of their constitutional rights are limited by a school district's status as a mere creature of the legislative will. Thus, in *Pass, supra,* a legislatively sanctioned change in district boundaries, depriving the plaintiff school district of part of its territory, was held not to deprive

the plaintiff of property without due process of law because the beneficial owner of the property was the state and the school district was merely a state-appointed trustee. Similarly, in *Antelope Valley etc. Dist.* v. *McClellan*, 55 Cal.App. 244 [203 P. 147], the school district and its resident landowners were held to have no constitutional right to notice of district boundary changes made pursuant to statutory annexation procedure. And in *Grigsby* v. *King*, 202 Cal. 299 [260 P. 789], where a teacher sought to compel a district to reinstate her under the Teacher's Tenure Act, the court rejected the district's claim that the act, which regulated only the employment of teachers, denied it equal protection of the laws. The act classified school districts rather than teachers and therefore merely constituted an attempt to limit the statutory powers of such districts to hire and fire. (See also *Los Angeles City School Dist.* v. *Griffin*, 3 Cal.2d 651 [46 P.2d 141]; *Mountain View School Dist.* v. *City Council, supra.*) None of the claims asserted by the school districts in the above cases was rejected on the ground that a school district had no standing to assert them; the court in each case reached the constitutional merits and determined whether the fact that the plaintiff was a school district affected the claim. Such decisions necessarily imply a finding that the school district has sufficient standing to raise constitutional questions even against the state; otherwise many of the cases cited might summarily have been dismissed rather than proceeding to judgment on the merits.

Where, as here, district trustees believe that legislation affecting the administration of the district is unconstitutional or is being enforced in an unconstitutional manner, they have a right to resist. As long as the district remains in existence its trustees may reasonably invoke the aid of a court to protect its property and funds from any unconstitutional interference. We hold that under the circumstances of this case appellant has sufficient standing to challenge the constitutionality of legislation which it contends directly affects its boundaries, its property and its funds.

Although appellant has standing to question the constitutionality of the legislative act, it is clear that its attack must fail. It was alleged in the complaint that the mere holding of the election would operate to deprive the district of some $85,000 of its funds. The demurrer admitted this allegation, although the Attorney General in his brief asserts that

the district will not be deprived of any funds. We, however, must accept the allegation as true. But as the cases cited above (*Hall* v. *City of Taft* and *Pass School Dist.* v. *Hollywood etc. Dist., supra*) make clear, the Legislature holds plenary power over school districts, and when its acts are constitutional, its transfer of the property of one district to another district does not constitute a taking of property without due process of law. (See also 43 Cal.Jur.2d, Schools, § 63, pp. 495-496, and cases cited.)

Section 17676, upon which appellant centers its attack, provides in substance for an increase in basic state support of $15[3] for each unit of average daily attendance for elementary school districts subject to a master plan meeting legislative standards, where: (1) the master plan was defeated by a majority of the voters of the entire district proposed to be unified, and (2) a majority of the votes cast in the local school district to be benefitted favored the unification plan.

Appellant contends that section 17676 contains an unreasonable classification, in violation of article I, section 21 of the California Constitution. We do not agree. The question of classification is primarily for the Legislature to determine in the light of its knowledge of all the facts and circumstances that give rise to the need for the legislation (*Wores* v. *Imperial Irr. Dist.*, 193 Cal. 609, 619-620 [227 P. 181]), and if any state of facts reasonably can be conceived that would sustain the act, there is a presumption of the existence of that state of facts. (*Borden's etc. Co.* v. *Baldwin*, 293 U.S. 194 [79 L.Ed. 281, 55 S.Ct. 187] ; *In re Fuller*, 15 Cal.2d 425, 437 [102 P.2d 321].) It is common knowledge, of which the superior court could take judicial notice, that, for many years the Legislature has been occupied with the task of consolidating smaller school districts into larger districts, in the interest of efficiency, economy, and a more equitable distribution of tax burdens. (See the declaration in Stats. 1965, First Ex. Sess. 1964, § 1, ch. 132.) The Legislature has declared its intention that the boundaries of existing high school districts be deemed the minimum geographical base for the organization of unified school districts, to be deviated from only in exceptional cases. It has made a finding that larger districts, covering all the grades from kindergarten through high school, tend to pro-

---

[3]Section 17676 was amended in 1967 to raise the amount to $20 (Stats. 1967, ch. 1209, § 13.2, p. 2934, effective August 15, 1967.)

mote a more efficient and economical educational system. The efficient and economical conduct of the educational system, and the fair and equitable distribution of its burdens is obviously a proper matter of legislative concern.

In seeking to accomplish these objectives the Legislature has provided for an increase in state aid for those districts whose voters recognize their need for incorporation into a larger district and who are willing to accept both the burdens and benefits of unification. The increase compensates for the benefits of unification denied the district by the failure of surrounding districts to approve. The statute operates uniformly throughout the entire state, and benefits every district which becomes similarly situated by voting for unification. In *Davis* v. *County of Los Angeles*, 12 Cal.2d 412, 424-425 [84 P.2d 1034], the court considered a statute providing for retirement benefits for certain school district employees if the electors of the district decided to take advantage of the statute. It was contended that the act was class legislation, and lacked uniformity of operation. The court declared (pp. 424-425) : ''The act is not special or 'class' legislation, nor does it lack uniformity of operation. It is a general law applicable throughout the state for the benefit of every school district whose electors vote to take advantage of its provisions.'' (See also *Housing Authority* v. *Dockweiler*, 14 Cal.2d 437, 460-461 [94 P.2d 794].) We conclude that the statute is not vulnerable to appellant's charge of invalid classification.

Appellant's charge that section 17676 is unconstitutional because it offers a financial inducement in return for a favorable vote on the issue of district unification, and is therefore an interference with the right of free suffrage (Cal. Const., art. XX, § 11), is without merit. No direct payment is extended to individual voters in return for casting their ballot in favor of unification. Rather, increased aid is made contingent upon a majority vote to unify, and the funds are received by the school district and spent for school purposes. Similar charges of duress were advanced in *Charles C. Steward Machine Co.* v. *Davis*, 301 U.S. 548 [81 L.Ed. 1279, 57 S.Ct. 883, 109 A.L.R. 1293], where the United States Supreme Court, in upholding the Social Security Act, pointed out (at pp. 589-590 [81 L.Ed. at pp. 1292-1293]) that there is a wide difference between duress and inducement in achieving desired legislation. Here, the Legislature, in seeking to achieve a valid objective, has tendered a financial inducement to those

districts that willingly cooperate in the achievement of the desired result. No district nor any elector is coerced. All who wish may receive the same benefit, or reject it, as their free choice may dictate.

The judgment is affirmed.

Draper, P. J., and Bray, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.