[Civ. No. 25397. First Dist., Div. One. Apr. 21, 1969.]

CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION, Plaintiff and Appellant, v. SEQUOIA UNION HIGH SCHOOL DISTRICT, Defendant and Respondent.

100

Richard H. Perry for Plaintiff and Appellant.

Keith C. Sorenson, District Attorney, and Howard E. Gawthrop, Deputy District Attorney, for Defendant and Respondent.

SIMS, J.—The California School Employees Association has appealed from an order denying a preliminary injunction against the Sequoia Union High School District. (Code Civ. Proc. former § 963, subd. 2; now § 904.1, subd. (f).) The injunction was sought to restrain respondent district from contracting for vending machines to dispense foodstuffs prepared off the school premises to pupils within the district.

The facts of this case are undisputed. Appellant is an employee representative organization representing employees in the public school system in the classified form of noncerti-

fied service. Respondent is a school district within the County of San Mateo.

During April of 1967, the district employed 35 persons in connection with its cafeteria service. On May 8, 1967, the governing board of the district decided to discontinue cafeteria services in its schools for the school year 1967-1968. The board at that time gave no indication that any substitute form of food service was being considered. The 35 food service employees were discharged as of July 1, 1967 by action of the board.

Prior to the above action of the board, a vending machine program had been operating for several years within respondent district. The machines served ice cream, noncarbonated drinks, and some prepackaged snack items to the students of respondent district. On October 2, 1967, at the request of some student's and parent's groups a proposal was received by the district board from the Pen-Pac Automatic Co. to install vending machines on campus which would serve hot and cold food items and contain a manual snack bar. The proposal was considered by the board at its regular meeting on October 4, 1967. At that time the board approved a motion by one of its members ''that the Superintendent [of schools] be authorized to work with any vendor he chooses an arrangement for the supply of a more balanced diet at Menlo Atherton High School on a temporary basis, and that the Superintendent is free to do this as he sees fit, so long as it is clear to the vendor involved that the District may have to change the arrangement in the near future.''

The district then negotiated with the Pen-Pac Automatic Co. with the intent of granting a concession to that or some similar company for the sale of food on campus through vending machines. The district required that the food to be sold in the machines be prepared and packaged off campus. The district would not pay any money to the company for supplying the machines, or receive any money from the company for granting the concession.

On October 13, 1967, the association filed a complaint for an injunction to restrain the district's ''performance of an illegal contract and illegal expenditure of public monies by a state agency.'' On November 6, 1967, the trial court found (1) that the association had standing to bring the action for the injunction; (2) that the association showed no grounds for a preliminary injunction; and (3) that ''the proposed

agreement for the furnishing of vending machines and the supply of food and beverages to be dispensed through such machines is not invalid.'' The request for a preliminary injunction was thereafter denied. This appeal followed.

The association contends that the district does not have authority to contract for the furnishing of food services through the sale of foods prepared off the school premises in vending machines, and that the privileges granted the supplier render the arrangement unconstitutional. The district renews its objection to the association's standing to sue. (See *Thomas* v. *Joplin* (1910) 14 Cal.App. 662, 664-666 [112 P. 729].)[1] It is determined that although the association has standing to sue because of the interests of its members past, present and potential, its objections are not well taken. The judgment must be affirmed.

## *Standing*

Plaintiff association alleged that it is a California nonprofit corporation and a taxpayer of the State of California; that it is an employee-representative organization representing public school employees in the classified service and has members in good standing employed by the defendant school district; that its membership is entirely composed of residents and taxpayers of this state; that members of the association were employed in the classified service as employees for the food services connected with cafeterias operated in various schools of the district until on or about May 1, 1967, when the cafeteria operation was discontinued and the employees were dismissed; that the district has agreed to and threatens to permit others to purvey foodstuffs to various schools through vending machines; that the law requires that the purchasing, preparation and distribution of foodstuffs be done by employees in the classified service; and that the proposed arrangement is not authorized by law. The association sought the following relief: ''For Judgment permanently enjoining Defendant District, its officers, agents, employees, and any and all persons acting for, with, or on behalf of said Defendant from performing any agreement or contract for the furnishing of food services or cafeteria services, including but not limited to

---

[1]The district properly may raise this point without filing a cross-appeal. (Code Civ. Proc., former § 956, now § 906; *Ratkovich* v. *City of San Bruno* (1966) 245 Cal.App.2d 870, 886-888 [54 Cal.Rptr. 333]; 3 Witkin, Cal. Procedure (1954) Appeal, § 72, p. 2229 and 1967 Supp., pp. 928-929.)

the purchasing, preparation, sale or dispensing of edibles and potables to pupils or employees in or about any school within said Defendant District by any means whatever, directly or by indirection, save and except only as such contract be with persons employed by the governing board in the classified service in accordance with the laws applicable thereto.''

The association's representative capacity was established by the declaration filed on its behalf, and the trial court found that it had capacity to sue.

In *California School Emp. Assn.* v. *Willits Unified School Dist.* (1966) 243 Cal.App.2d 776 [52 Cal.Rptr. 765], it was established that the association had standing to sue in its own name to enforce the employment rights of its members. (243 Cal.App.2d at pp. 779-780; and see *Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 283-285 [32 Cal.Rptr. 830, 384 P.2d 158]; and *International Assn. of Fire Fighters* v. *City of Palo Alto* (1963) 60 Cal.2d 295, 298-299 [32 Cal.Rptr. 842, 384 P.2d 170].)

The district asserts that the foregoing principle cannot apply, because the program of food service, through school cafeterias employing persons for food service positions as part of the classified service, has been terminated. The case is unlike that arising in the Willits district. There the janitorial services for which the district had contracted would have to be performed by someone in any event. If the contract, allegedly unauthorized, was found to be beyond the power of the school district, someone else would have to be employed to perform the services. In this case, however, the establishment of a cafeteria, or any provision for food service is optional. (See Ed. Code, §§ 17001 and 17002.)[2] If the method proposed by the district is unauthorized or unconstitutional, no one will have a right to employment, there merely will be no food service at all.

Nevertheless, it appears that the association has a justiciable interest in the case. In the *Willits* case the court ultimately ruled that the two members of the association who were involved had no contractual rights to employment for the period during which they were displaced by the services rendered under the illegal contract. (243 Cal.App.2d at pp.

[2]These sections provide: ''§ 17001. The term 'cafeteria' as used in this code is considered synonymous with the term 'food service.' ''
''§ 17002. The governing board of any school district may establish cafeterias in the schools under its jurisdiction whenever in its judgment it is advisable to do so.''

785-787.) They were denied back salary or damages for diminished income. Apparently no issue was raised with respect to that portion of the judgment of the lower court which ordered the reinstatement of those employees (who had in fact already been rehired) despite the determination that they had no right to the renewal of their contracts of employment. The court had no hesitancy, however, in upholding the injunction against the school district insofar as it prohibited the district from contracting with nonclassified employees for the performance of janitorial services.

It is not a great leap to recognize that the association has an interest in establishing that if food services are furnished in any form, classified employees must be employed to perform the labor and services attendant to that operation. The fact that any operation may be discontinued if the proposed form is found illegal should not be determinative. In the *Willits* case the court observed: ''The discussion below on the substantive issues of the case demonstrates that the question is not only of common interest (as might be the case where relatively few parties in private litigation would have a common problem), but is of public interest, for the issues relate to interpretation of important statutes.'' (243 Cal.App.2d at p. 780.) ██ A ''court will not undertake to decide abstract questions of law at the request of a party who shows no substantial right that can be affected by a decision either way.'' (*Streator* v. *Linscott* (1908) 153 Cal. 285, 288 [95 P. 42].) One factor to be considered is whether the plaintiff has ''such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions. . . .'' (*Baker* v. *Carr* (1954) 369 U.S. 186, 204 [7 L.Ed.2d 663, 678, 82 S.Ct. 691], as quoted in *San Carlos School Dist.* v. *State Board of Education* (1968) 258 Cal.App.2d 317, 322 [65 Cal.Rptr. 711].)

██ Here the plaintiff's interest is in establishing, for the benefit of its displaced members, that the food services to be rendered under the proposed contract are a mere substitute for those which were discontinued, and, as such, are illegal because performed by nonclassified employees. This interest satisfies the foregoing criteria. It is sufficient that the controversy affects labor and services which, if the association's contentions are correct, must be rendered by those of a class which it is organized to represent.

The foregoing conclusion makes it unnecessary to determine whether the association has a right to maintain this action as a taxpayer's suit to enjoin an illegal expenditure. No opinion is expressed as to whether a school district is of such state concern (cf. *Hall* v. *City of Taft* (1956) 47 Cal.2d 177, 181-182 [302 P.2d 574]; *San Carlos School Dist.* v. *State Board of Education, supra,* 258 Cal.App.2d 317, 324; *Yreka etc. School Dist.* v. *Siskiyou etc. School Dist.* (1964) 227 Cal.App.2d 666, 670 [39 Cal.Rptr. 112], and *Butler* v. *Compton Junior College Dist.* (1947) 77 Cal.App.2d 719, 728-729 [176 P.2d 417], with *Pasadena School Dist.* v. *Pasadena* (1913) 166 Cal. 7, 10-13 [134 P. 985, Ann.Cas. 1915B, 1039, 47 L.R.A. N.S. 892] [overruled in *Hall* v. *City of Taft, supra,* 47 Cal.2d at p. 184]; and *People* v. *Rinner* (1921) 52 Cal.App. 747, 752 [199 P. 1066]) that a state taxpayer may bring such a suit against a school district without alleging residence within and payment of taxes to the district (cf. *Ahlgren* v. *Carr* (1962) 209 Cal.App. 2d 248, 254 [25 Cal.Rptr. 887]). Nor is any attempt made to determine whether the right to bring a taxpayer's action against a school district is limited by statute. (Cf. Code Civ. Proc., § 526a, with *Gogerty* v. *Coachella Valley Jr. College Dist.* (1962) 57 Cal.2d 727, 730 [21 Cal.Rptr. 806, 371 P.2d 582], and *Lusk* v. *Compton City School Board of Education* (1967) 252 Cal.App.2d 376, 379 [60 Cal.Rptr. 426].)

The fact, if it be such, that the proposed contract method of providing food is more economical than the operation of a cafeteria can neither affect the association's right to sue, nor enlarge the district's powers beyond those conferred by law. (See *Stockburger* v. *Riley* (1937) 21 Cal.App. 2d 165, 167 [68 P.2d 741].)

*Authority to Contract for Food Vending Machines*

The Legislature has enacted comprehensive provisions governing the establishment and operation of school cafeterias. (Ed. Code, pt. 3, div. 13, ch. 2, §§ 17001-17104.) Two questions suggest themselves. Do these provisions authorize the district to dispense food through vending machines, and, if so, does the procedure proposed in this case violate any of the other provisions of the code?

The use of vending machines is recognized in sections of the code which prescribe the manner in which the district should defray the expenditures for the costs of operating a cafeteria. It is contemplated that certain costs shall be a

charge against the school district's general funds; other costs may be charged against the revenues from the sale of food or against general funds as may be determined by the governing board; and presumably those costs not specifically mentioned shall be paid from the moneys received from sales of food. Section 17006 provides in pertinent part, "The food served shall be sold to the patrons of the cafeterias at such price as will pay the cost of maintaining the cafeterias, exclusive of *the costs made a charge against the funds of the school district by this chapter*.[3] . . . *and items made a charge against the funds of the school district by resolution of the governing board under authority of this chapter*.[4] . . ." (Italics added.)

Section 17052 provides in part: "The cafeteria fund [the moneys received from the sale of food (§ 17051)] shall be used only for such expenditures as are necessary for the operation of school cafeterias. However, *when the governing board deems it necessary, they may make expenditures from the cafeteria fund for the lease or purchase* of additional cafeteria equipment for the central food processing plant, and *of vending machines and their installation and housing*." (Italics added.)

Section 17101 reads in part: ". . . *when the governing board of a school district deems it necessary, the governing board may make the cost of the lease or purchase* of additional cafeteria equipment for a central food processing plant, and *of vending machines and their installation and housing*, a charge against cafeteria funds. *If school district funds are expended* for the lease or purchase of additional cafeteria equipment for a central food processing plant, or *for the lease, purchase, installation, or housing of vending machines*, the governing board may at any time within five years after

---

[3] "The cost of housing and equipping cafeterias is a charge against the funds of the school district. . . ." (§ 17101.) ". . . Wages, salaries and benefits . . . for all food service personnel shall be paid from the general fund of the school district. . . ." (§ 17103.) The cost of equipment for a central food processing plant and of vending machines may be made a charge against cafeteria funds (see portions of §§ 17052 and 17101 in text, *infra*), and the board may order reimbursement from the cafeteria fund to the general fund of wages and other personnel expenses incurred in operating and maintaing the cafeteria. (§ 17103.)

[4] "The governing board of a school district may by resolution make the cost of maintenance of the physical plant used in connection with cafeterias, the cost of replacement of equipment and the cost of telephone charges, water, electricity, gas, coal, wood, fuel oil, and garbage disposal a charge against the funds of the school district. . . ." (§ 17101.)

such expenditure reimburse school district funds from cafeteria funds." (Italics added.)[5]

The foregoing provisions demonstrate that the Legislature intended that the sale of food through vending machines is to be governed by the chapter of the code under review.[6] Any doubt in this regard is resolved by the provisions of section 17001 (fn. 2, *supra*) which make "cafeteria" synonymous with "food service."

The association insists that the distirct may only use vending machines as a part of an overall cafeteria operation. Prior to the discontinuance of the cafeteria service at the end of the 1966-1967 school year there was a limited vending machine service for ice cream, noncarbonated drinks and some prepackaged snack items. This service was retained in effect for the school year 1967-1968. Nothing in the provisions for cafeterias or food service appears to preclude the district from dispensing all foods or beverages it elects to furnish through vending machines. It is true that a bank of vending machines in an automat does not meet the classical concept of a cafeteria as "a restaurant or cafe at which the patrons serve themselves from, or are served at, a counter, taking the food to tables to eat." (Webster's New Internat. Dict. (2d ed. 1939) Unabridged.) Nevertheless, as has been noted, the provisions in the Education Code expressly include food service in general. Since the law expressly contemplates that vending

---

[5]Prior to 1961 (Stats. 1961, ch. 1138, §§ 1 and 2, p. 2873) there was no reference to vending machines in the provisions governing "cafeterias." By amendment in that year, districts of a certain size were authorized to make expenditures from the cafeteria fund for the lease or purchase of vending machines. (See §§ 17052 and 17101, as amended.) In 1963 this authorization was extended without qualification. (Stats. 1963, ch. 1888, §§ 1 and 2, p. 3878.) The first paragraph of section 17052 and the first paragraph of section 17101 were amended to read as they are found today.

[6]This conclusion, which is not seriously disputed by the parties, is also suggested by the discussion of the general powers of a school district to contract as conferred by sections 15801 and 15955 of the Education Code, which is found in *California School Emp. Assn.* v. *Willits Unified School Dist.* (1966) 243 Cal.App.2d 776 [52 Cal.Rptr. 765]. The court observed: "[T]he fact that a number of services are specifically made the proper subject of contract (transportation [Ed. Code, § 16801 et seq.]; employment of attorneys [Ed. Code, § 1016]; repair of football equipment [Ed. Code, § 15814]; financial advice [Gov. Code, § 53060]; repair of property [Ed. Code, §15951]), although probably not bringing into play the *inclusio unius* rule, does suggest doubt that section 15955 is all-embracing; . . ." (243 Cal.App.2d at p. 782.) So here the existence of specific provisions concerning food services suggests that those provisions rather than any general power, shall determine the mode and measure of the power of the district's governing body in the field.

108

machines may be used for dispensing some of the food which the district is authorized to sell and serve, there is no inherent reason why all such food and drink may not be so dispensed.[7]

█ It is noted that the provisions which refer to vending machines are linked with provisions relating to the cost of lease or purchase of "additional cafeteria equipment for a central food processing plant." Any implication from that juxtaposition that vending machines may only be used to dispense food processed at a central food processing plant operated by the district disappears on analysis. The subjects are disrelated. The 1961 amendments (see fn. 5, *supra*) referred solely to vending machines. It could not rationally have been intended that a one-school district, or a multi-school district without a central food processing plant could not utilize vending machines. Furthermore, it must be recognized that many items such as ice cream, beverages and candy bars, are not commonly processed by those in the business of serving food.

█ The association has not referred the court to any provisions of law which specify the extent to which food must be prepared and packaged or otherwise prepared for serving upon the school premises. The Legislature has manifested an interest in providing free meals or meals at reduced cost for needy pupils (§§ 11704-11708), and in providing a proper environment in which to eat lunch (§ 15808). None of these provisions attempt to control the manner in which the food shall be prepared and served. Nor does the fact that the district may be eligible to participate in federal assistance programs[8] affect the manner in which the district elects to serve food to its pupils.

[7]Section 10702 of the Education Code which permits the governing board of any district to authorize a student organization to maintain activities, including the sale of food, expressly provides "in elementary or high schools no food items prepared on the premises shall be sold by such student organizations during the school day." Pursuant to further provisions of the section the superintendent of public instruction has listed food items which require preparation, and which therefore fall within the foregoing prohibition. (Cal. Admin. Code, tit. 5, § 4200.) The district asserts that this means that a recognized student body may sell food items prepared off the premises at any time of the day or night, and that therefore the district itself may do so. The affirmative premise does not necessarily follow from the prohibition of the statute. The remarks of the trial court are appropriate and are approved. "I can tell you that I don't follow your argument in that respect. But that is not what we have at hand here, in any event."

[8]The association refers to the Donated Food Program (see §·32; Public Law 320, 74th Congress, as amended 7 U.S.C.A., § 612c), the National School Lunch Act (Public Law 396, 79th Congress, 42 U.S.C.A., §§ 1751-1760), and the Child Nutrition Act of 1966 (Public Law 89-642, 89th Congress, 42 U.S.C.A., § 1771, et seq.).

The question of the extent to which food may be prepared and packaged before delivery to the ultimate purveyor will depend on the needs of the purveyor, and is only limited by the state of the technology of preserving foods and beverages in a hygienic manner. It cannot be seriously contended that the district should secure salt, ice, cream, flavoring and other ingredients in a raw state and make and market its own ice cream. Common knowledge indicates that the foodstuffs and beverages which the district proposed to furnish through vending machines are commonly so marketed. No provision of law has been found which precludes the district from securing prepared food to be sold in vending machines as part of its food service program.

The association's principal objection is that the proposed method of operating violates that portion of section 17103 as first amended in 1963 (Stats. 1963, ch. 462, § 1, p. 1310; see also Stats. 1965, ch. 1048, § 1, p. 2687), which provides: ''The governing board of a school district shall employ persons for food service positions as part of the classified service. . . .'' (Their wages, etc. are a charge on the district's general funds unless reimbursement is ordered. See fn. 3, *supra*.) Insofar as persons are employed or engaged in the food service activities conducted on the school premises, application of the principles enunciated in the *Willits* case would require that they be hired by the district as part of the classified service. (*California School Emp. Assn.* v. *Willits Unified School Dist.*, *supra*, 243 Cal.App.2d at pp. 783-785.)

It may be assumed that it would have been improper to accept that part of the offered services under which the supplier proposed to operate a manual snack bar and a change bar, to supervise the machines, and to prepare french fries and milkshakes on the school campus, unless the employees so engaged were somehow embraced within the district's classified service. On the other hand, since the proposition as accepted required that sales be made through the vending machines, and limited the sales to food items which had been prepared and packaged before being delivered to the school premises, no such employees were involved.

It must be assumed that the operation was so limited. The trial court's order recites: ''The proposed agreement for the furnishing of vending machines and the supply of food and beverages to be dispensed through such machines is not invalid.'' Under these circumstances the only employees involved are the persons delivering the food to the machines

and those who furnish such repairs and maintenance as may be necessary. Their status may be likened to that of the deliverymen and repairmen who respectively delivered groceries and repaired the equipment formerly used in the conventional cafeteria operation. ■ Not everyone who performs nonacademic services which benefit the district must be a "member of the classified service." (*California School Emp. Assn.* v. *Willits Unified School Dist., supra,* 243 Cal. App.2d at pp. 782-783.)

■ The association further contends that the proposed arrangement violates the principle that a school cafeteria, and so any food service activity, must be operated with a view toward maintaining it without profit. (See § 17006, *supra,* and Ops.Cal.Atty.Gen., Opn. No. NS-5560 (Aug. 22, 1944) ; 4 Ops.Cal.Atty.Gen. 117.) The school district is not going to make any profit under the proposed arrangement. In fact it must absorb the costs of electricity under the terms of the agreement, and the general fund will also bear the expense of any water used and the costs of supervision and of garbage disposal. (See § 17101, fn. 4, *supra.*) Presumably the supplier will make a profit on the food and beverages which are sold. This was also true of the butcher, baker, and groceryman who formerly sold supplies to the cafeteria. Such profits are not prohibited by any provision of law to which the court's attention has been directed.[9] From all that appears the arrangement is essentially the same as if the district has leased the vending machines, with the lessor-supplier obligated to maintain them. In return the supplier is authorized to supply products to be sold to those authorized to buy[10] at the price

[9]The association has not directly raised any issue as to the manner in which supplies should be purchased for a cafeteria or other form of food service. (See § 15955.) No opinion is expressed as to whether bids should be solicited for the vending machines or for the foodstuffs to be dispensed from them. Section 17005 provides: "Perishable foodstuffs and seasonal commodities needed in the operation of cafeterias may be purchased by the school district in accordance with rules and regulations for such purchase adopted by the governing board of said district notwithstanding any provisions of this code in conflict with such rules and regulations." (Cf. §§ 16801-16805, which permit a district to, and define the manner in which it may, contract for transportation of pupils.)

[10]Section 17003 provides as follows: "Food shall not be sold at any cafeteria operated by a school district to anyone except pupils and employees of any school district, members of the governing board thereof, and members or employees of the fund or association maintaining the cafeteria; provided, however, that nothing herein contained shall prohibit the use of the cafeteria facilities by any work or harvest camp maintained by or within the district, and by persons entitled to use the school under the Civic Center Act; and provided further, that the governing board

fixed in the agreement, which may be deemed the equivalent of the cost to the district.

Under the provisons of section 6900-6908 of the Government Code licensed blind vendors may operate vending stands, snack bars, cafeterias or vending machines in any building owned or occupied by the state, a city or a county. Section 6901 excludes buildings used by an educational institution under junior college grade. The association contends that since even blind vendors are excluded from elementary and high school buildings, the Legislature did not intend to permit any concessionnaires in such buildings. As noted above, the question presented does not turn upon the right of the district to grant concessions, but on the scope of the district's power under the acknowledged authority to furnish food services.

*Constitutionality*

Section 25 of article XIII of the California Constitution provides in part, ''The Legislature shall have no power to give or lend, or to authorize the giving or lending, of the credit of the state, or of any . . . subdivision of the state . . . in aid of or to any person, association, or corporation . . . nor shall it have power to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever; . . .''

The association contends that what is contemplated is a gift of the use of school property for the installation of vending machines, a gift of an easement of such areas as may be necessary to the loading of the machines with prepared foods, and a gift of the use of electricity and of the costs of maintenance of the area surrounding the machines, of garbage disposal and of supervision of pupils in the machine areas.

The district refers to precedents which have authorized the leasing of public property for private use when not needed for the public purpose for which it was acquired (see *Gridley Camp No. 104* v. *Board of Supervisors* (1929) 98 Cal.App. 585, 592-595 [277 P. 500] [veterans' auditorium]), and as part of a program to finance a program of public improvements (see *City & County of San Francisco* v. *Ross* (1955) 44 Cal.2d 52, 56-58 [279 P.2d 529] ; and *Larsen* v. *City & County*

of any school district operating a cafeteria may exempt by formal resolution of the board other individuals and organizations from the operation of this section.''

*of San Francisco* (1957) 152 Cal.App.2d 355, 367-368 [313 P.2d 959] [parking garages on public property]).

The association properly points out that those cases have nothing to do with the present case in which the property involved is fully appropriated to public purposes. It refers to the Civic Center Act (Ed. Code, §§ 16551-16566), which expressly prohibits monopolistic use of school facilities (§ 16553) and contemplates reimbursement of the school district where charges are made for activities conducted on the school premises (see §§ 16561-16563).

The key to the matter is the legislative authorization to furnish food services. The statutory provisions clearly authorize the district to furnish facilities and funds for such purposes as part of the educational process. The satisfaction of the physical hunger of the pupils is not so disrelated to the process of ministering to their intellectual needs that funds and property used for the former purpose may be deemed a gift of public money or thing of value. The fact that a private entrepreneur makes a profit from the equipment and foodstuffs which it furnishes does not make the school's contribution to the food service process a gift to him. (Cf., however, fn. 8, *supra*.) Any benefit to the supplier which may be attributed to the election of the district to furnish food services in the manner proposed is purely incidental, and is no different from the benefit formerly furnished the purveyor of unprepared foodstuffs which ultimately ended up on a steam table.

The order is affirmed.

Molinari, P. J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 18, 1969.