[No. F021287. Fifth Dist. Jan. 9, 1996.]

CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION et al., Plaintiffs,
Cross-defendants and Respondents, v.
KERN COMMUNITY COLLEGE DISTRICT BOARD OF TRUSTEES,
Defendant and Cross-complainant and Appellant.

COUNSEL

Fekete, Carton, Hartsell, Grass, Ronich, Peters & Inman, Roger R. Grass and Frank Fekete for Defendant, Cross-complainant and Appellant.

Margie Valdez and William C. Heath for Plaintiffs, Cross-defendants and Respondents.

OPINION

BUCKLEY, J.—Appellant Kern Community College District Board of Trustees (hereafter the District), a nonmerit school district, appeals from injunctive relief granted to respondent California School Employees Association (hereafter CSEA) prohibiting the District from subcontracting certain groundskeeping services. The District argues the injunction must be lifted because it may lawfully subcontract for these services.

In this opinion we hold that critical distinctions between merit and nonmerit school districts compel a conclusion that under certain circumstances school districts[1] may subcontract for services with persons who are not employees of the district.

STATEMENT OF FACTS

The District and CSEA are parties to a collective bargaining agreement providing, in relevant part:

"ARTICLE 6M—CONTRACTING AND BARGAINING UNIT WORK

"6M1 The District shall not contract out for services which result in a layoff (as defined in Education Code Section 88001) or reduction of regular hours or regular wage rates of existing bargaining unit members.

---

[1]Briefly stated, a merit district operates under a merit system with an independent personnel commission and a nonmerit or local permanence district operates with the district's governing board responsible for the functions of a personnel commission.

"6M2 No supervisory or management employee may perform any work within the job description of a bargaining unit employee to the extent of replacing bargaining unit employees."

On or about July 28, 1992, the District entered into a contract with C & C Lawn Service (hereafter C & C), whereby C & C agreed to perform groundskeeping services at Porterville College. Prior to the contract with C & C, all of the District's groundskeeping work was performed exclusively by the District's classified workers.

Dr. Richard Wright, president of Bakersfield College, declared that C & C performed "groundskeeping work for ancillary ground surrounding new buildings on the Porterville College campus." Gerald L. McFadyen, senior groundsworker with the District, declared that immediately prior to the board's entering into the contract with C & C, "I was assigned as the senior groundsworker responsible for maintaining the same area of the campus now maintained by employees of C & C Lawn Service. I have now been reassigned to the baseball field. [¶] 5. Employees of C & C Lawn Service now perform the same duties previously performed by myself." However, it is undisputed that no employees were laid off or suffered a reduction in hours because of the contract with C & C.

On March 1, 1993, CSEA and John L. Coffee, a taxpayer, filed a petition for peremptory writ of mandate alleging the contract between the District and C & C violates Education Code[2] sections 88003 and 88004.[3] Petitioners sought issuance of a peremptory writ of mandate which, in relevant part, would command the District to immediately terminate its contract with C & C and to refrain from entering into such contracts in the future.

The District answered and filed a cross-complaint seeking indemnity from CSEA for all claims, damages or liabilities arising out of the petition.

CSEA's demurrer to the petition was filed May 19, 1993.

Hearing on the petition was held July 20, 1993. The matter was taken under submission and on October 25, 1993, the trial court issued a minute

[2]Unless otherwise noted, all statutory references are to the Education Code.

[3]Individual petitioner John L. Coffee was represented below by counsel for CSEA, William C. Heath. Coffee has not filed an appearance in this court and Heath has not specifically indicated to this court that he represents Coffee on appeal. However, the response brief filed by Heath is entitled "RESPONDENTS' BRIEF," and it appears to be assumed by the parties and this court that Coffee continues to be represented by Heath and that he is indistinguishable from CSEA for purposes of this action.

order granting the petition and sustaining the demurrer to the cross-complaint without leave to amend.

The court's statement of decision was filed December 29, 1993, and notice of entry of judgment was served February 2, 1994.

DISCUSSION

*Is the contract with C & C prohibited by the Education Code?*

■ Resolution of this question necessitates interpretation of sections 88003 and 88004.

In relevant part, section 88003 provides:

"The governing board of any community college district shall employ persons for positions that are not academic positions. The governing board shall, except where Article 3 (commencing with Section 88060) of this chapter or Section 88137 applies, classify all such employees and positions. The employees and positions shall be known as the classified service.[4]

. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"This section shall apply only to districts not incorporating the merit system as outlined in Article 3 (commencing with Section 88060) of this chapter."

Section 45103 is a parallel statute applying to elementary and secondary schools.

In relevant part, section 88004 provides: "Every position not defined by the regulations of the board of governors as an academic position and not specifically exempted from the classified service according to the provisions of Section 88003 or 88076 shall be classified as required by those sections and shall be a part of the classified service. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"This section shall apply to districts which have adopted the merit system in the same manner and with the same effect as though it were a part of

---

[4]"Jobs in the classified service apparently include custodians, bus drivers, cafeteria workers, clerical staff, some instructional aids, and other nonteaching and nonadministrative positions." (*California Sch. Employees Assn.* v. *Trona Joint Unified Sch. Dist.* (1977) 70 Cal.App.3d 592, 594, fn. 3 [138 Cal.Rptr. 852].)

Article 3 (commencing with Section 88060) of this chapter."

Section 45104 is a parallel statute applying to elementary and secondary schools.

Finding *California Sch. Employees Assn.* v. *Willits Unified Sch. Dist.* (1966) 243 Cal.App.2d 776 [52 Cal.Rptr. 765] (hereafter *Willits*) to be controlling, the trial court ruled that sections 88003 and 88004, quoted above, prohibit subcontracting of the groundskeeping services at issue. In reaching this decision, the court found the collective bargaining agreement and the District's past practice to be irrelevant and relied instead on the fact that the District "has existing classified positions for the same work which is being subcontracted to an independent contractor."

The District argues the trial court's reasoning is flawed, asserting that the Education Code does not prohibit the contested subcontracting and that enactment of the "permissive Education Code" in 1972 overruled *Willits*. Not surprisingly, CSEA argues that the trial court's ruling is sound.

Neither party's argument is entirely persuasive. As will be shown below, whether *Willits* was implicitly overruled is not critical since it and later cases following its holding are fully distinguishable. Analysis of sections 88003 and 88004 in context with other relevant sections of the Education Code demonstrates that these sections do not prohibit the subcontracting at issue here. Moreover, the contract with C & C does not violate the collective bargaining agreement between the parties. Thus, issuance of the injunction was erroneous.

■ With one exception not relevant to the issue before us, the facts are undisputed. Resolution of the question before this court is a question of law resting entirely on the interpretation of relevant statutes and case law. Therefore, review is de novo; this court is not bound by the lower court's ruling. (*Willits, supra,* 243 Cal.App.2d at p. 781; *Neumarkel* v. *Allard* (1985) 163 Cal.App.3d 457, 461 [209 Cal.Rptr. 616].)

Our legal journey begins in 1966 when our sister court in the First District issued its opinion in *Willits*. There, the appellate court modified and affirmed the trial court's issuance of an injunction prohibiting appellant school district from contracting with an independent firm for performance of janitorial services. (243 Cal.App.2d at p. 788.)

CSEA argues *Willits* mandates that all persons who perform regular functions connected with operation of schools must be employed by the district and classified, arguing that *California School Employees Assn.* v. *Del Norte County Unified Sch. Dist.* (1992) 2 Cal.App.4th 1396, 1403 [4

Cal.Rptr.2d 35] (hereafter *Del Norte*), and a bill analysis prepared in connection with Senate Bill No. 952 (1981-1982 Reg. Sess.) support this conclusion. However, CSEA's characterization of existing law is overbroad. Close analysis of *Willits* reveals that its holding was *expressly limited* to the janitorial employees before it and was primarily based upon the existence of a specific statutory provision mandating the employment of janitors by school districts and on other factors not present here.

In *California Sch. Employees Assn.* v. *Sunnyvale Elementary Sch. Dist.* (1973) 36 Cal.App.3d 46, 62-64 [111 Cal.Rptr. 433], the First District found the use of independent research and development experts did not violate section 13581 (now § 88003). In reaching this conclusion, the court questioned the basis of its earlier decision in *Willits*, writing: "It is not clear why the court concluded that janitors are covered by section 13581. The possible reasons appear in the case. (1) The immediate predecessor to section 13581 specially designated that janitors be employed by the school district rather than be contracted for. (2) It is especially important that school districts maintain close control over janitors employed because they keep the key to the door of the school and come into close contact with the children. (3) Section 13581 applies to all those to be employed by the school district; the obligation of the statute cannot be avoided by contracts. Only those specifically exempted are not to be made a part of the 'classified service.'" (36 Cal.App.3d at p. 63.) As will be explained *post*, the third reason given by the court, which is the interpretation of *Willits* advanced by CSEA, does not comport with the entire statutory scheme embodied in the current Education Code; rather, the first two reasons given more accurately explain *Willits*'s holding.

In *Willits* the court wrote, "For many years there has been a special designation of janitors as persons to be employed by school boards," noting that section 816 of the Education Code (since repealed) requires the superintendent of schools to employ a janitor if the board fails to do so. (243 Cal.App.2d at p. 784.) The court also reasoned that the Legislature had enacted statutes forbidding employment of sex offenders, provisions which apply only to employees of school districts and not employees of contractors. It recognized that "[t]he janitor (or janitress) comes into fairly close contact with pupils and teachers." (*Ibid.*) Finally, the court wrote that "the janitor, the traditional keeper of the keys to the doors (from which role his name derives) and the protector of cleanliness, has always been deemed an essential and intimate part of the operation of the schools." (*Ibid.*) Based on these factors, the court concluded, "[w]e have pointed to specific code provisions concerning janitors. The solicitude of the Legislature for these

specific employees impels us to hold that the functions of janitors must be performed by employees. We do not determine the applicability of this rule to other noncertified employees as to whom comparably detailed statutory provisions have not been shown to us." (*Id.* at p. 788.)

 There are no comparably detailed statutory provisions at issue here. The code does not mandate the hiring of groundskeepers. Moreover, groundskeepers at a community college are not comparable to the traditional "keeper of the keys" and "protector of cleanliness" at the small elementary or secondary school described in *Willits*. The groundskeepers cutting the grass outside a community college are not the "keepers of the keys"; they need not enter the school buildings and do not come in close contact with students who, it must be noted, are adults and not children. Thus, *Willits* is distinguishable from the instant case.

In 1969, the First District again addressed this issue. In *California School Emp. Assn.* v. *Sequoia etc. School Dist.* (1969) 272 Cal.App.2d 98 [77 Cal.Rptr. 187] (hereafter *Sequoia*), the court concluded that the school district was permitted to install vending machines instead of running a full-service cafeteria. In dicta, the court relied on *Willits* in writing that it "assumed" it would have been improper for the district to have attempted to hire an independent contractor to run a snack bar. In reaching this conclusion, the court again pointed to a specific provision requiring the school district to " 'employ persons for food service positions as part of the classified service.' " (*Id.* at p. 109.) The fact that the *Sequoia* court also relied on a specific statutory provision further strengthens our conclusion that the holding in *Willits* was based primarily on the existence of a specific statutory provision mandating the hiring of the janitors at issue and the court did not intend to enunciate a broad principle of law, applicable in all cases.

Recently, in *Del Norte*, the First District again relied on *Willits* in holding that a merit school district was prohibited from entering into contract with a private company to supervise maintenance and custodial employees on a regular basis. The court found that because the positions fell within the classified service and the district's merit system, the subcontracting was prohibited. (2 Cal.App.4th at p. 1404.)

The District argues that the distinction between merit and nonmerit school districts is crucial and that the holding in *Del Norte* is limited to districts which have adopted the merit system; CSEA denies the distinction is significant and asserts *Del Norte* is indistinguishable from the case at bar. We agree with the District.

As is aptly explained in *Neumarkel* v. *Allard*, *supra*, 163 Cal.App.3d at pages 461-462, the principles governing the proper interpretation of statutory enactments are well established:

"Courts must ascertain legislative intent so as to effectuate a law's purpose. [Citations.] 'In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is . . . contained therein, not to insert what has been omitted, or to omit what has been inserted. . . .' [Citation.] Legislative intent will be determined so far as possible from the language of statutes, read as a whole, and if the words are reasonably free from ambiguity and uncertainty, the courts will look no further to ascertain its meaning. [Citation.] ' "The court should take into account matters such as *context*, the object in view, the evils to be remedied, the history of the times and of *legislation upon the same subject*, public policy, and contemporaneous construction." ' [Citation.] 'Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole.' [Citations.]

"Education Code sections bearing upon the same subject should be read and construed together. [Citation.] '[W]hen a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it.' [Citation.]"

Classified service for merit and nonmerit school districts is governed by distinct and separate sections of the Education Code. Section 88003 governs classified service in districts not incorporating the merit system. In districts utilizing the merit system, section 45256 is applicable. There are crucial differences in the two provisions. Section 45256 provides, in relevant part, "No person whose contribution consists solely in the rendition of individual personal services and whose employment does not come within the scope of the exceptions listed above shall be employed outside the classified service." Section 88003 does not contain this limiting language. Further, section 45241 provides that in merit school districts the board shall "employ, pay, and otherwise control" the services of persons "only in accordance with the provisions of the article." Nonmerit systems are not subject to a similar statutory restriction.

The differences between the statutory provisions cannot be dismissed as mere oversights. Section 88004 provides that it shall apply to merit system districts. Section 88003 expressly provides that it applies only to nonmerit districts. Thus, the clear language of the statutes demonstrates that thought and care was given to the determination which provisions shall apply to

which type of school district. Sections 45241, 45256, 88003 and 88004 must be read together and harmonized to the greatest extent possible. (*Neumarkel v. Allard, supra,* 163 Cal.App.3d at pp. 461-462.) The *Del Norte* opinion recognized this distinction by expressly stating that it was basing its decision on the statutory provisions applicable to merit system districts. (2 Cal.App.4th at p. 1403.)

Were this court to interpret section 88003 as requiring all groundskeeping work to be performed by employees of the district, not simply as requiring that all employees of the district be classified, the last paragraph of section 45256 would be reduced to mere surplusage. By reading the statutory scheme as a whole, we see that its authors have made a clear distinction between merit and nonmerit districts. Merit districts are subject to additional statutory provisions and language expressly limiting their ability to utilize services of individuals who are not classified employees, provisions not applicable to nonmerit districts.

Thus, as we have seen, all of the cases addressing this issue are distinguishable. *Willits, supra,* 243 Cal.App.2d 796 and *Sequoia, supra,* 272 Cal.App.2d 98 involved specific statutory provisions mandating that the services in question be provided by classified employees. In *Del Norte, supra,* 2 Cal.App.4th 1396, the district at issue had adopted the merit system and was therefore subject to the restrictions expressed in sections 45256 and 45241. Therefore, CSEA's argument is premised upon a faulty and overbroad reading of existing law.

We are equally unpersuaded by CSEA's argument that legislative rejection of two bills (Assem. Bill No. 1462 and Sen. Bill No. 952, both 1981-1982 Reg. Sess.) that would have modified the effects of the *Del Norte* decision and section 45103, respectively, connote present legislative prohibition against subcontracting out. First, as noted previously, *Del Norte* is a merit district case. Second, and more significantly, whatever the motivations were for rejecting statutory modification, they have no bearing upon the plain meaning of section 88003.

Reading the statutory scheme as a whole in a manner which gives meaning to the entirety of the Education Code leads to the conclusion that for nonmerit system districts, section 88003 merely requires all persons employed in positions not requiring certification to be classified. Absent other specific code provisions mandating employment of such individuals, section 88003 does not require all work to be performed by classified employees. As is discussed *ante,* to conclude otherwise negates the final paragraph of section 45256 and all of section 45241.

Section 35160 provides that the school district may undertake any activity which is not in conflict with, inconsistent with or preempted by any law and which does not conflict with the purposes for which school districts are enacted. As demonstrated above, the subcontracting at issue is not prohibited or preempted by other sections of the Education Code. CSEA has not asserted that it conflicts with the purposes for which school districts are enacted. Therefore, the District's contract with C & C is not violative of the Education Code.

Finally, CSEA has provided no evidence that classified employees have been laid off or had their hours reduced as a result of the contract with C & C. Accordingly, the contract also does not violate the terms of the bargaining agreement. Therefore, the trial court's issuance of the injunction was erroneous as a matter of law and must be reversed.

However, the trial court's sustaining of the demurrer to the District's cross-complaint for indemnity was proper. The District has never, below or on appeal, advanced any coherent legal argument demonstrating a right to indemnity from CSEA. Its argument on appeal is without citation to authority and is not based on any recognizable legal theory. It does not necessarily follow from an allegation that the bargaining agreement does not prohibit all subcontracting, that CSEA is legally responsible to indemnify the District for any claims arising out of the petition (claims which in all likelihood are rendered moot by our opinion herein).

DISPOSITION

The trial court is directed to vacate the issuance of the peremptory writ of mandate and enter an order denying the same. The judgment sustaining CSEA's demurrer is affirmed. Costs are awarded to the District.

Martin, Acting P. J., and Dibiaso, J., concurred.

A petition for a rehearing was denied February 1, 1996, and respondents' petition for review by the Supreme Court was denied April 11, 1996. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.