[No. H014417. Sixth Dist. Aug. 1, 1996.]

SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715,
AFL-CIO, Plaintiff and Appellant, v.
BOARD OF TRUSTEES OF THE WEST VALLEY/MISSION
COMMUNITY COLLEGE DISTRICT et al., Defendants and Respondents.

COUNSEL

Van Bourg, Weinberg, Roger & Rosenfeld, Amy D. Martin and Vincent A. Harrington, Jr., for Plaintiff and Appellant.

Brown & Conradi and Nicholas T. Calderon for Defendants and Respondents.

OPINION

**BAMATTRE-MANOUKIAN, J.**—The question presented here is whether a community college district may enter into a contract with a private entity for the operation of its campus bookstores. The trial court decided this issue in favor of the college district, granting the district's cross-motion for summary judgment. Appellant is a union representing two classified employees who were employed by the district in the campus bookstore. Appellant claims the contract is not authorized by any provision of the Education Code and is inconsistent with sections 81676, 88003 and 88004 of the code.[1] Respondent contends the general authority of section 70902 permits it to contract out the operation of its bookstore, even though no statute specifically provides authorization. Respondent also contends the contract is allowed under Government Code section 53060 as a "special services" contract. We agree with respondent and we therefore affirm the judgment.

BACKGROUND

In December of 1990, appellant, the Service Employees International Union, Local 715, filed a complaint for declaratory and injunctive relief. The complaint alleged that respondent, the Board of Trustees of the West Valley/Mission Community College District and the West Valley/Mission Community College District (collectively, the District), intended to solicit bids in the private sector for the operation of one or more of its campus bookstores. The complaint alleged in general that the Education Code does not permit the contracting out of campus bookstore operations and specifically that any authorization provided by section 81676.5 was no longer available as that statute had been automatically repealed as of October 1990. Appellant alleged that its classified employees would be irreparably harmed if bookstore operations were transferred from the District to a private entity.

Appellant's application for a preliminary injunction was denied as premature, since no contract had actually been entered into. However, thereafter,

---

[1]Any statutory references not otherwise specified are to the Education Code.

on December 31, 1991, respondent did contract out the operation of the Mission College campus bookstore to Barnes & Noble Bookstores, Inc. (hereafter Barnes & Noble). Under this five-year contract, Barnes & Noble was to "manage, operate and provide services for" the Mission College Bookstore. Barnes & Noble agreed to "staff the bookstore with experienced and qualified managerial and clerical personnel." As to the three full-time bookstore employees currently employed by the District, Barnes & Noble agreed to keep them on and to reimburse the District for maintaining them within the District's payroll and state retirement systems. Unless they chose to become Barnes & Noble employees, those three employees were specifically entitled to all collective bargaining provisions set forth by the employees' association. Barnes & Noble also agreed to give preference to students for part-time employment and to provide the same wage rate currently in effect for students employed by the District.

In addition to these basic provisions, the Barnes & Noble contract provided numerous benefits to the college. Barnes & Noble agreed to renovate the existing bookstore facility, at a cost to it of up to $75,000. Barnes & Noble would provide a computerized textbook management system, a guaranteed supply of used books, and its substantial purchasing power and resulting competitive prices. Moreover, the agreement provided that Barnes & Noble would pay to the District a guaranteed minimum of $100,000 annually, or a percentage of net sales, whichever was greater. These funds were earmarked for a new student center, and far exceeded amounts the District was realizing as profits in operating its own bookstore. In addition, Barnes & Noble would donate $5,000 per year for public service events.

Several years passed after Barnes & Noble took over the bookstore operation. On January 12, 1995, appellant filed a motion for summary judgment on the ground that the District's contract with Barnes & Noble violated the Education Code. Appellant asserted that classified employee positions had been eliminated as a result of the transfer of operation of the bookstore to Barnes & Noble, and that classified employees had been relocated. Respondent filed opposition and also filed a cross-motion for summary judgment.

Both motions were heard April 27, 1995. On June 26, 1995, the court noticed its intent to rule in favor of respondent on the basis of the broad authority granted by the "permissive code concept" embodied in section 70902, and also on the basis of specific authority of Government Code section 53060. The court further explained that section 81676 "does not prohibit the District from contracting out its bookstore operations to an outside party." A written order and judgment were filed July 27, 1995.

## STANDARD OF REVIEW

Appellant does not contend that the existence of disputed material facts made summary judgment inappropriate. Instead the issues are whether various statutory provisions permit or prohibit the contract entered into between the District and Barnes & Noble. ■ The meaning and effect of statutory provisions is a matter for our independent review. (*Greenwood Addition Homeowners Assn.* v. *City of San Marino* (1993) 14 Cal.App.4th 1360, 1367 [18 Cal.Rptr.2d 350].)

## DISCUSSION

■ Appellant argues 1) that the Barnes & Noble contract is inconsistent with section 81676, 2) that the repeal of former section 81676.5 indicates a legislative intent to rescind any authority for entering into such a contract, 3) that the contract violates sections 88003 and 88004 by eliminating jobs of classified employees and 4) that this was not a "special services" contract permitted under Government Code section 53060.

### The "Permissive" Education Code

Section 70902 provides in pertinent part: "(a) Every community college district shall be under the control of a board of trustees, which is referred to herein as the 'governing board.' The governing board of each community college district shall establish, maintain, operate, and govern one or more community colleges in accordance with law. In so doing, *the governing board may initiate and carry on any program, activity, or may otherwise act in any manner that is not in conflict with or inconsistent with, or preempted by, any law and that is not in conflict with the purposes for which community college districts are established.*" (Italics added.)

Section 70902 was added to the code in 1988 but contained the same language as former section 72233, which had been added in 1976. Section 72233 was enacted in response to a 1972 amendment to the California Constitution, article IX, section 14, which added the following sentence to that section: "The Legislature may authorize the governing boards of all school districts to initiate and carry on any programs, activities, or to otherwise act in any manner which is not in conflict with the laws and purposes for which school districts are established."

When the Education Code was amended in 1981, the Legislature stated that "It is the intent of the Legislature, in enacting this act, to implement more fully, for the community colleges of California, the intent of the people

in adopting the amendment of Section 14 of Article IX of the California Constitution. The Legislature further finds and declares that, in order to do so, it is necessary to amend or repeal many provisions of the Education Code. [¶] Wherever in this act a power or duty of a community college district governing board is repealed, or otherwise deleted by an amendment, it is not the intent of the Legislature to prohibit the board from acting as prescribed by the deleted provisions. Rather, *it is the intent of the Legislature, that the community college district governing board shall have the power, in the absence of other legislation, to so act under the general authority of Section 72233 of the Education Code.*" (Stats. 1981, ch. 471, § 1, pp. 1800-1801, italics added.) This "general authority," now embodied in section 70902, became known as the "permissive code" concept.

In addition to the broad authority provided by section 70902, that statute also gives a school district specific authority to "[m]anage and control district property" and to "contract for the procurement of goods and services as authorized by law." (§ 70902, subd. (b)(6).) Although section 70902 does not specifically authorize the District to contract out its bookstore operations, it does not need to. As the Legislature expressly stated, the permissive code allows a district's governing board to act under its general authority without specific statutory authorization.

Since the permissive code was enacted in 1976, the Legislature has repealed many Education Code provisions which had specifically authorized community colleges to conduct various activities. For example, the Legislature repealed section 82361, authorizing community colleges to establish cafeterias (Stats. 1981, ch. 471, § 96, p. 1807), section 82340, authorizing districts to contract for transportation services (Stats. 1981, ch. 471, § 95, p. 1807), and sections 72419 through 72422, authorizing districts to contract for legal services (Stats. 1990, ch. 1372, §§ 340-344, p. 6267). According to legislative counsel, specific statutory authority for such activities is no longer necessary in light of the permissive code. (Legis. Counsel's Dig. Assem. Bill No. 1730, 4 Stats. 1981 (Reg. Sess.) Summary Dig. pp. 124-125.)

The only limitation placed on a governing board's authority under the permissive code is that the board may not act in any manner "in conflict with, or inconsistent with, or preempted by, any law." (§ 70902, subd. (a).) Appellant contends that respondent's contract with Barnes & Noble is inconsistent with other statutes in the Education Code, namely sections 81676 and 88003 and 88004.

*Section 81676*

Section 81676 provides that "[a]ny person who is employed in a bookstore maintained by a community college pursuant to this section is a member of the classified service of the district . . . ."[2] The same section goes on to address the disposition and accounting of revenue and expenditures of the bookstore operation, providing in general that "[n]et proceeds from the operation of a community college bookstore shall be used for the general benefit of the student body as determined by the governing board. . . ." and that "[f]unds derived from the operation of a community college bookstore shall be subject to audit . . . ."

Appellant contends this provision "specifically contemplates" that the community college bookstores will be operated by the college districts, rather than by private entities. We disagree. Section 81676 simply provides that where a district does maintain a bookstore, it must comply with certain rules and regulations, including employing classified personnel, following procedures described in the Community Colleges Budget and Accounting Manual, submitting to regular audits, etc. It does not state that a district must maintain its own bookstore. It neither specifically authorizes nor prohibits operation of a college bookstore by a private entity. Thus we do not believe that the District's contract with Barnes & Noble here either conflicts with or is inconsistent with section 81676.

Appellant points out that no section of the Education Code specifically addresses or authorizes the operation of a college bookstore by an entity other than the school district itself. As we have noted, however, under the permissive code a district does not require specific authorization to carry on any program or activity not in conflict with the law or the purposes for which the college districts are established. There is no contention here that the contract in question did not benefit the District or further its purposes.

*Former Section 81676.5*

Section 81676.5 was enacted in 1989 in response to *1st Street Books* v. *Marin Community College Dist.* (Cal.App.) review granted June 22, 1989; cause retransferred with directions January 18, 1990, subsequent opinion not published (A040727). It was automatically repealed one year later. (Stats. 1989, ch. 1340 § 3, p. 5535.)

---

[2]The classified service is made up of employees in nonacademic positions. (§§ 88003, 88004.)

At the time of the underlying lawsuit in *1st Street Books*, the first paragraph of section 81676 provided that ". . . the governing board of any community college district may establish a bookstore on district property for the purpose of offering for sale textbooks, supplementary textbooks, school supplies, stationery supplies, confectionary items, and related auxiliary school supplies and services."

In 1986, the Marin Community College District contracted with Barnes & Noble, which agreed to " 'provide inventory and consulting services for the District's bookstores.' " (*1st Street Books* v. *Marin Community College Dist.*, *supra.*) Pursuant to this agreement, Barnes & Noble undertook to sell not only textbooks, stationary, art supplies, and sundries but also " 'general books.' " The contract specifically provided that Barnes & Noble would sell "New York Times Bestsellers" at a 25 percent discount from the publisher's price. (*Ibid.*)

1st Street Books and Artist's Proof Bookstore & Graphics Workshop was a privately owned bookstore which sold primarily general trade books. 1st Street Books filed a complaint for injunctive relief against the college district alleging that the agreement with Barnes & Noble was a violation of section 81676. 1st Street Books complained that section 81676 did not authorize the district to operate a full-scale bookstore and that allowing the college bookstore to sell general trade books at the substantially discounted prices available to Barnes & Noble would drive independent booksellers, such as 1st Street Books, out of business.

The trial court issued a preliminary injunction and later a permanent injunction restraining Marin Community College District and Barnes & Noble from selling any books except text books or other books recommended or required for courses offered at the college.

The Court of Appeal affirmed, finding that the Legislature intended in section 81676 to limit the kinds of books which could be sold at the college bookstore to those required for academic purposes. (*1st Street Books* v. *Marin Community College Dist.*, *supra.*) Shortly after the opinion in *1st Street Books* was filed, a bill was introduced in the Senate, at the request of the California Community Colleges Chancellor's Office, responding to the decision (Sen. Bill No. 1590 (1989-1990 Reg. Sess.)). In addition, a petition for review was granted by the Supreme Court.

The legislative history of Senate Bill No. 1590 reveals that the main criticism of the *1st Street Books* opinion was that the Court of Appeal ignored the broad authority embodied in the permissive code, while enforcing what it interpreted as limiting language in section 81676. Senate Bill No.

1590 was signed into law on October 2, 1989, and made effective immediately. It deleted the first paragraph of section 81676 and added section 81676.5. Section 81676.5, however, was to be effective only for one year or until the Supreme Court decided the *1st Street Books* case, whichever occurred last.

Section 81676.5 provided in pertinent part:

"(a) Pursuant to the authority granted by subdivision (a) of Section 70902, the governing board of any community college district may establish a bookstore or bookstores on district property.

(b) In the event that the governing board of a district determines not to operate its own bookstore or bookstores, the governing board may contract for the operation of a bookstore or bookstores, provided that any contract, whether a lease agreement, a consultant services contract, or other form of agreement, shall be competitively bid."

The sunset provision contained in section 81676.5, subdivision (c), provided that: "This section shall remain in effect only until, and shall be repealed, one year from the date that this section becomes effective or when the California Supreme Court decision on the appellate court case of *1st Street Books* v. *Marin Community College District*[, *supra*,] 208 Cal.App.3d 1275, review granted 6-22-89 (S009983) becomes final, whichever occurs last."

On January 18, 1990, the Supreme Court retransferred the case to the First Appellate District, Division Four, with directions to vacate its opinion in *1st Street Books* and to reconsider in light of the recent legislation. The court thereafter issued a second opinion, unpublished, in which it found that there was now no statutory impediment to Marin Community College District operating its bookstores in the manner contemplated by the agreement with Barnes & Noble.

It is noteworthy that there was no issue in *1st Street Books* as to whether the college district had the authority to contract with Barnes & Noble. Rather the issue there was whether under section 81676 the bookstore could sell New York Times bestsellers at discounted prices in addition to textbooks and school supplies. The district's authority to contract with Barnes & Noble was not questioned.

Appellant's argument regarding section 81676.5 pales in the light of this legislative history. Appellant sees the automatic repeal of 81676.5 as a

legislative intent that community college districts no longer have the authority to contract out the operation of their bookstores. Section 81676.5 is not susceptible to such an interpretation. We find no indication in the legislative history of the statute that the Legislature intended to grant this particular authority to college districts for only the one-year period during which the statute was in effect, and then to rescind it. This would be an absurd result. Rather the legislative history reveals that the Legislature intended to reaffirm the broad authority vested in community college districts by virtue of the permissive code and to specifically reject the limiting interpretation of the court of appeal in *1st Street Books*. The sunset provision of section 81676.5 simply reflects an expectation that the Supreme Court would resolve the matter by publishing a decision in *1st Street Books*.

Thomas Nussbaum, Vice Chancellor for Legal Affairs for the California Community Colleges, provided assistance with the drafting and revisions of Senate Bill No. 1590. His declaration sheds additional light on the purposes behind section 81676.5. He states: "When we drafted Education Code section 81676.5, there was no intention to change the authority of community college districts under the permissive Education Code. The legislation was written to provide that if community colleges chose to contract out the operation of their bookstore they must follow certain procedures [i.e., competitive bidding]. The legislation was intended to deal with an immediate problem and a repeal was written into the statute because specific statutory authorization for maintaining or contracting out a bookstore was not necessary under the permissive Education Code."

As the Legislature expressly stated in regard to the permissive code, the repeal or deletion of statutory provisions authorizing particular actions by community college districts is not intended to prohibit those actions. Rather it is the Legislature's intent that a district, "shall have the power, in the absence of other legislation, to so act under the general authority of Section 72233 [now 70902] of the Education Code." (Stats. 1981, ch. 471, § 1, p. 1801.)

*Sections 88003 and 88004*

Appellant next points to sections 88003 and 88004 as statutory impediments to the District's contract with Barnes & Noble. These sections basically provide that persons employed by a college district in nonacademic positions are to be part of the classified service, with certain specific

exceptions.[3] Section 88003 applies only to "districts not incorporating the merit system" and section 88004 applies to districts "which have adopted the merit system." The District in this case is a nonmerit system district.

A recent Fifth District case, *California School Employees Assn.* v. *Kern Community College Dist.* (1996) 41 Cal.App.4th 1003 [48 Cal.Rptr.2d 889] (*Kern*) explained the importance of the distinction between sections 88003 and 88004. *Kern* involved a contract between the Kern Community College District, a nonmerit school district, and a private groundskeeping service. Prior to the contract with the groundskeeping service, all of the district's groundskeeping work was performed exclusively by the district's classified workers. The employee association filed a petition for injunctive relief claiming that the contract violated sections 88003 and 88004.

The trial court in *Kern* relied on the case of *California Sch. Employees Assn.* v. *Willits Unified Sch. Dist.* (1966) 243 Cal.App.2d 776 [52 Cal.Rptr. 765] in finding that sections 88003 and 88004 prohibited the subcontracting of the groundskeeping services at issue because the district had classified positions for the same work. The trial court therefore issued a writ of mandate commanding the district to terminate its contract with the groundskeeping service.

The Court of Appeal reversed. In resolving the question whether the services contract was prohibited by the Education Code, the court determined that the distinction between merit and nonmerit school districts was crucial. Merit systems are subject to additional statutory provisions which expressly limit their ability to utilize services of individuals who are not classified employees. Those limiting provisions do not apply in nonmerit systems. (*Kern*, *supra*, 41 Cal.App.4th at pp. 1011-1012.) In nonmerit systems, section 88003 simply requires that all persons employed in positions not requiring certification be classified. It does not require that all work be performed by classified employees. (41 Cal.App.4th at p. 1012.)

The *Kern* court distinguished *Willits*. In that case the court invalidated a contract the school district had entered into with an independent firm for

---

[3]Section 88003 provides in part: "The governing board of any community college district shall employ persons for positions that are not academic positions. The governing board, except where Article 3 (commencing with Section 88060) or Section 88137 applies shall classify all those employees and positions. The employees and positions shall be known as the classified service. . . . [¶] This section shall apply only to districts not incorporating the merit system . . . ."

Section 88004 provides in part: "Every position not defined by the regulations of the board of governors as an academic position and not specifically exempted from the classified service according to the provisions of Section 88003 or 88076 shall be classified as required by those sections and shall be a part of the classified service. . . . [¶] This section shall apply only to districts which have adopted the merit system . . . ."

performance of janitorial services previously provided by classified employees. The holding in *Willits* was based in part on the nature of the job of janitor as "the traditional keeper of the keys to the [school] doors," and the close contact such employees have with students and teachers. (*California Sch. Employees Assn.* v. *Willits Unified Sch. Dist., supra,* 243 Cal.App.2d at p. 784.) For this reason and because at the time of the opinion in *Willits* there had been a specific statutory provision mandating the employment of janitors by school districts, the court in *Kern* concluded that *Willits* should be limited to its facts. Moreover, *Willits* was decided before the advent of the permissive education code concept.

Cases relying on *Willits* can be similarly distinguished. Thus in *California School Emp. Assn.* v. *Sequoia etc. School Dist.* (1969) 272 Cal.App.2d 98 [77 Cal.Rptr. 187], the court commented, citing *Willits,* that it would be improper for the school district to hire an independent contractor to run a snack bar. (*Id.* at p. 109.) In *Sequoia,* as in *Willits,* however, there were specific statutory provisions concerning food services for schools. Moreover, like *Willits, Sequoia* predated the permissive code.

In the recent case of *California School Employees Assn.* v. *Del Norte County Unified Sch. Dist.* (1992) 2 Cal.App.4th 1396 [4 Cal.Rptr.2d 35], the court relied on *Willits* in deciding that a contract with a private company to supervise maintenance and custodial operations at district schools was in part a violation of the Education Code. *Del Norte,* however, was a merit system district. As the court in *Kern* explained, the holding in *Del Norte* must be limited to districts which have adopted the merit system. Indeed the *Del Norte* opinion recognized the distinction between merit and nonmerit systems by expressly stating that it was basing its decision on the statutory provisions applicable to merit system districts. (*Del Norte, supra,* at p. 1403.) As noted above, section 88003, which applies in a nonmerit case such as ours, simply requires that all noncertified employees of a school district be classified. It does not require that all work be performed by the classified employees of the district.

We conclude that appellant's reliance on *Willits* and its progeny is misplaced and that section 88003 does not prohibit the contract in question here.

*Government Code Section 53060—"Special Services"*

Appellant contends that the District's contract with Barnes & Noble is not permitted under Government Code section 53060 because the services performed by Barnes & Noble are not "special services." Assuming for the sake of argument that Government Code section 53060 could operate to undermine the authority granted the District under the permissive Education Code, we disagree with appellant's contention.

Government Code section 53060 provides that "The legislative body of any public or municipal corporation or district may contract with and employ any persons for the furnishing to the corporation or district special services and advice . . . if such persons are specially trained and experienced and competent to perform the special services required."

■ The test as to whether services are special services depends on "the nature of the services; the necessary qualifications required of a person furnishing the services; and the availability of the service from public sources." (*California Sch. Employees Assn.* v. *Sunnyvale Elementary Sch. Dist.* (1973) 36 Cal.App.3d 46, 60 [111 Cal.Rptr. 433].) *Sunnyvale* concerned an agreement between a school district and a private corporation which provided for performance of research and development work and services. This was held to be permissible under Government Code section 53060. The court determined that the facts presented to the trial court established that the corporation's personnel were professional, highly trained, experienced and extremely competent in the fields in which they rendered services. (36 Cal.App.3d at p. 61.) Further, the court found that appellants failed to show that the services provided by the private corporation were otherwise available to the school districts from public sources. (*Ibid.*)

■ Similarly in our case the contract with Barnes & Noble provides the District with the services of professional, experienced and specially trained personnel. Pursuant to the contract, Barnes & Noble provides the District with a management team of dedicated professionals, including a regional manager who visits the campus on a regular basis to assist the store manager and to ensure that the store is operating according to the standards set by the District and by Barnes & Noble. Barnes & Noble senior managers meet regularly with District administration, faculty and students to ensure that the campus is being properly served. Barnes & Noble provides a programmed training method for store management that includes regional and national meetings and training seminars; a completely computerized textbook management system widely recognized in the industry; a guaranteed supply of used books to save students money; the purchasing power of over 250 bookstores to bring school supplies and sundry items to the campus at competitive prices; the ability to transfer books between other Barnes & Noble stores in order to alleviate out of stock problems for textbooks; and a computerized ordering system for all nonbook items.

In short, Barnes & Noble provides a panoply of services to the District which could not otherwise be provided by classified personnel. This is not

disputed by appellant. In fact appellant concedes that the District's contract with Barnes & Noble provides the District with management expertise, technological support and profits which respondent could not match through the use of classified personnel. Appellant contends, however, that this is the improper focus for an analysis of Government Code section 53060. The determinative factor, appellant argues, is whether classified personnel previously providing services at the bookstore have now been replaced by outside employees. Appellant claims the clerical personnel provided by Barnes & Noble through the contract are nothing more than the bookstore assistants who were previously employed by the District.

We must disagree with appellant's interpretation of Government Code section 53060. It appears that a main purpose of contracting out the bookstore operation was that a private company could provide the specialized expertise in bookstore management and operation which the District lacked, and which was otherwise unavailable to it. The District's employees were simply unable to provide the type of services offered by Barnes & Noble. Under *Sunnyvale*, appellant must demonstrate that the services provided by an outside source are available from a public source. Appellant's assertion that classified employees were previously operating the bookstore is not sufficient under this test.

Appellant relies on *Jaynes v. Stockton* (1961) 193 Cal.App.2d 47 [14 Cal.Rptr. 49] for support of the contention that the services provided by Barnes & Noble personnel do not constitute "special services." *Jaynes*, however, is distinguishable. In *Jaynes*, Elks Hill School District employed a firm of private attorneys to advise its board of trustees respecting a specific school problem when the services of county counsel were available to them for that very purpose. The court focused on the availability of those same legal services from the county counsel, at no cost or expense to the district. Furthermore, the court noted that county counsel was willing and able to perform the legal services provided by the outside firm of attorneys. Why should a public entity spend public funds for services, the court reasoned, when it could obtain the same services with no payment?

In the present case, the District is not expending public funds for services already available to it. On the contrary the contract in question is one which produces substantial financial benefits to the college district. Moreover, the expertise, technology, management skills and buying power of Barnes & Noble could not be duplicated by the bookstore assistants employed by the District. Unlike the county counsel in *Jaynes* who was competent to perform the same legal services as the private attorney hired by the district, here the

prior bookstore personnel did not have the training or expertise to provide the services provided under the Barnes & Noble contract.

Appellant argues that Barnes & Noble has employed clerical personnel who perform essentially the same services as the bookstore assistants were previously performing. Thus the contract with Barnes & Noble has resulted in the substitution of outside employees for positions formerly filled by classified employees. However, if the District is authorized to contract out for the special services provided by a private entity, as we conclude it is, it follows that the hiring practices of the private entity are not subject to the statutory constraints which may apply to public entities. Appellant relies again on *California School Employees Assn.* v. *Del Norte County Unified Sch. Dist., supra,* 2 Cal.App.4th 1396, which appears to reach a contrary result. However, as we have noted, the district in that case was a merit system and the same considerations do not apply in our case.

## DISPOSITION

We affirm the judgment.

Cottle, P. J., and Mihara, J., concurred.