[No. E044388. Fourth Dist., Div. Two. Jan. 26, 2009.]

CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION et al., Plaintiffs and Respondents, v.
COLTON JOINT UNIFIED SCHOOL DISTRICT et al., Defendants and Appellants.

858

COUNSEL

Atkinson, Andelson, Loya, Ruud & Romo, Ronald C. Ruud, John W. Dietrich and Jennifer D. Cantrell for Defendants and Appellants.

Michael R. Clancy and Sonja J. Woodward for Plaintiffs and Respondents.

## OPINION

### GAUT, J.—

#### 1. Introduction[1]

This appeal concerns the proper method for calculating leave deductions for 73 days of missed work for an injured schoolbus driver, Donna Haynes. A classified school employee is entitled to receive several kinds of compensation and leave when injured or ill: workers' compensation benefits (Lab. Code, § 4653); 60 days of industrial and illness leave (§ 45192); sick leave (§ 45191); vacation leave (§ 45197); and a form of leave called "differential leave" (§ 45196). Under the so-called 100-day rule of section 45196, in addition to other forms of leave, an employee is entitled to receive differential leave at half pay for up to 100 days.

The California School Employees Association (CSEA) and Haynes, petitioners and respondents on appeal (petitioners), contend that the Colton Joint Unified School District and the school board (collectively Colton) improperly deducted both vacation leave and differential leave under section 45196 concurrently.

Colton appeals from a judgment granting the writ petition. We agree with petitioners and the superior court that Colton could not deduct vacation leave and differential leave concurrently.

#### 2. Factual and Procedural Background

The facts are generally undisputed except for a slight disagreement about when Haynes received workers' compensation benefits. Haynes was employed as a schoolbus driver for Colton. On May 10, 2004, she injured her knee. She had surgery on May 31, 2005. She was absent for various periods between May 12, 2005, and July 16, 2006, during which time she received workers' compensation benefits. The CSEA contends Colton, while collecting Haynes's workers' compensation benefits, miscalculated her vacation leave and differential leave.

Two leave periods are at issue. Petitioners do not contest the calculations made for the initial 60 days of industrial and illness leave (§ 45192) between May 12, 2005, and September 11, 2005, or for the leave period between May 31, 2006, and July 14, 2006, when Colton deducted sick leave (§ 45191) of

---

[1] All statutory references are to the Education Code unless stated otherwise.

one-third day and differential leave of one day at half pay.[2] (§ 45196.) The two periods for which petitioners do question the deductions are the leave period of 67 workdays between September 12 and December 18, 2005, and another six days for the winter school break between December 19 and 30, 2005.

Between September and December 2005, for each of the 67 workdays absent, Haynes assigned her workers' compensation benefits of two-thirds of a day's pay to Colton. Colton then deducted one-third of a day of Haynes's accrued vacation, and paid her for one full day. During that time, Haynes had no sick leave. Additionally, Colton deducted differential leave, an additional day at one-half pay under section 45196, meaning that Colton charged Haynes the equivalent of two days of leave while paying Haynes for only one day. Colton's declarant, James Downs, asserted Colton had the right under the collective bargaining agreement, articles 12.2.8 and 12.7.6, to deduct differential leave concurrently while deducting vacation leave and while receiving Haynes's workers' compensation benefits.

The parties disagree about the deductions made for the six days of the December 2005 winter break. In the writ petition and her supporting declaration, Haynes avers that she received two-thirds of her pay in workers' compensation benefits, which she assigned to Colton, and Colton deducted one full vacation day and one day of differential leave, making the amount of deductions two and two-thirds days of leave for each of the six days.

In its opening appellant's brief, Colton contends Haynes did not receive workers' compensation benefits for the six days of winter break because it was a mandatory vacation for employees. Colton asserts it deducted one full vacation day and one day of differential leave for each day. In their respondents' brief, petitioners cite the record to show that Haynes did receive workers' compensation for the six days in December. Colton does not attempt to refute this point.

CSEA and Haynes did not file a grievance under the collective bargaining agreement. Instead, they filed the petition for writ of mandate seeking to compel Colton to recalculate Haynes's leave deductions. Colton demurred on the grounds that petitioners had failed to exhaust their administrative remedies by not pursuing the grievance procedures in the collective bargaining agreement. The court overruled the demurrer.

The court rejected Colton's argument about exhaustion of remedies and granted the writ petition: "[Colton] contends that [petitioners] have an

---

[2] For the final three days of absence, July 14 through July 16, 2006, all Haynes's leave was exhausted and she received two-thirds of her pay based on the workers' compensation benefit.

obligation to exhaust their administrative remedies. At bench, the court finds this does not apply in that [petitioners are] attempting to enforce a controlling statute and not a collective bargaining agreement. The language of Education Code § 45196 supports [petitioners'] contention. In part, '. . . the paid sick leave authorized under such a rule shall be exclusive of any other paid leave, holidays, vacation, or compensating time to which the employee may be entitled[.'] From the court's review of the moving and responding papers the only reasonable conclusion is that 'exclusive' means just that."

## 3. Discussion

We conduct a de novo review where the facts are not disputed and the legal issues on appeal involve statutory construction. (*California School Employees Assn. v. Kern Community College Dist.* (1996) 41 Cal.App.4th 1003, 1008 [48 Cal.Rptr.2d 889], citing *California Sch. Employees Assn. v. Willits Unified Sch. Dist.* (1966) 243 Cal.App.2d 776, 778 [52 Cal.Rptr. 765].) Although the parties may have initially disagreed about whether Haynes received workers' compensation benefits for the six days of the December 2005 winter break, Colton finally seems to concede she did receive benefits because it does not contest CSEA's citation to the record. We also do not deem the facts about workers' compensation benefits to be dispositive in deciding the principal legal issue in the case: whether Colton could deduct vacation leave and differential leave concurrently.

Colton argues both the collective bargaining agreement and the Education Code permit it to deduct the two kinds of leave concurrently. Colton also contends the issue involves interpretation of the collective bargaining agreement and therefore should have first been presented for administrative adjudication.

Petitioners counter that their writ petition depends wholly on statutory interpretation, allowing recourse to the courts in the first instance. Furthermore, they assert the Education Code provides for consecutive, not concurrent, use of vacation leave and differential leave.

Several kinds of leave were available to Haynes. During the whole period of her absence for injury, she received workers' compensation benefits of two-thirds her regular pay. (Lab. Code, § 4653; Ed. Code, §§ 44043, 44044.) For the first 60 days, she was entitled to industrial and illness leave. (§ 45192.) After that leave was exhausted, under the Education Code and the collective bargaining agreement, she was entitled to receive any accrued sick leave, succeeded by her vacation leave, and augmented by her differential leave—all subject to "coordination" under articles 12.2.8 and 12.7.6 of the collective bargaining agreement to keep her in full-pay status as long as

possible. (§§ 44043, 44044, 45191, 45192, 45196 & 45197.) Petitioners agree Colton could properly deduct sick leave and differential leave concurrently, as it did between May 31 and July 14, 2006. Petitioners, however, contend that Colton could not properly deduct vacation leave and differential leave concurrently between September and December 2005.

The issues on appeal primarily involve statutory construction of the Education Code. Based on an interpretation of section 45196 and the other related statutes, the writ petition challenged Colton's practice of deducting vacation and differential leave concurrently. A writ of mandate ordering Colton to recalculate the amounts wrongfully deducted from Haynes's leave banks would, of necessity, conclude Colton's policy violated section 45196. (*California School Employees Assn., Tustin Chapter No. 450 v. Tustin Unified School Dist.* (2007) 148 Cal.App.4th 510, 524 [55 Cal.Rptr.3d 739].) We conclude a writ petition was the appropriate proceeding for petitioners to pursue their claims rather than a grievance or administrative proceeding.

The most significant statute at issue is section 45196, which provides for differential leave of 100 days at half pay, minus the number of regular sick leave days the employee has accrued. Section 45196 excludes vacation leave from its operation:

"When a person employed in the classified service is absent from his duties on account of illness or accident for a period of five months or less, whether or not the absence arises out of or in the course of employment of the employee, the amount deducted from the salary due him for any month in which the absence occurs shall not exceed the sum which is actually paid a substitute employee employed to fill his position during his absence. [¶] . . . [¶]

"Entitlement to sick leave provisions under this section, if any, shall be considered 'entitlement to other sick leave' for the purposes of computing benefits under the provisions of Section 45192 if the absence is for industrial accident or illness and shall be used after entitlement to all regular sick leave, accumulated compensating time, vacation or other available paid leave has been exhausted.

"*The foregoing provisions shall not apply to any school district which adopts and maintains in effect a rule which provides that a regular classified employee shall once a year be credited with a total of not less than 100 working days of paid sick leave, including days to which he is entitled under Section 45191 [accrued sick leave]. Such days of paid sick leave in addition to those required by Section 45191 shall be compensated at not less than 50 percent of the employee's regular salary. The paid sick leave authorized*

*under such a rule shall be exclusive of any other paid leave, holidays, vacation, or compensating time to which the employee may be entitled. Nothing in this section shall preclude the governing board from adopting such a rule."* (Italics added.)

The italicized portion of the statute applies in this case because Colton follows the 100-day rule. Section 45191 is the statute providing 12 days of annual sick leave for full-time classified employees like Haynes. Read together, the two statutes mean that Haynes was entitled to at least 100 days of differential leave, offset by any accrued sick leave. The differential leave is paid at one-half of an employee's salary. Section 45196 also expressly provides the combined sick leave/differential leave is exclusive of vacation. Contrary to Colton's assessment of the statute as "not a 'model of clarity,' " we conclude that its meaning on the face can be interpreted fairly easily. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563]; *People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].) As applied to Haynes, she was entitled to combined sick leave and differential leave of at least 100 days. The parties do not disagree on this point.

The issue in contention is whether Colton could also combine vacation concurrently with differential leave even though the statute defines differential leave (the paid leave authorized under the 100-day rule) as exclusive of vacation leave. Unless vacation leave is redefined as sick leave within the meaning of section 45196,[3] we agree with petitioners and the trial court that differential leave and vacation leave should not be combined. Rather the vacation leave and differential leave should be deducted separately, or consecutively, possibly entitling Haynes to additional days of differential leave after her sick leave and vacation leave were exhausted.

We reject Colton's initial argument that section 45196 is not subject to interpretation on its face. Therefore, we do not need to consult evidence of legislative intent. (*People v. Birkett* (1999) 21 Cal.4th 226, 231–232 [87 Cal.Rptr.2d 205, 980 P.2d 912].) Nevertheless, we grant Colton's motion for judicial notice (Evid. Code, § 459) and offer some brief comments on Colton's related arguments, most of which erroneously treat sick leave and vacation leave as equivalent rather than exclusive under section 45196.

Section 45196 was enacted in 1969. It is clear from the statute itself, as well as the legislative history, that differential leave and sick leave were intended to be combined to provide at least 100 days of disability leave. The

---

[3] "A statute is to be construed to avoid absurdity." (*California School Employees Assn. v. Travis Unified School Dist.* (1984) 156 Cal.App.3d 242, 248 [202 Cal.Rptr. 699].)

legislative history cited by Colton referred specifically to sick leave not vacation leave. (Legis. Counsel's Dig., Assem. Bill No. 597 (1969 Reg. Sess.) as introduced Feb. 20, 1969, and amended Apr. 15, 1969; Assem. Com. on Education, Rep. on Assem. Bill No. 597 (1969 Reg. Sess.) Apr. 15, 1969; Crandall's (bill's author) Statement Regarding Sick Leave Benefits for Classified School Employees; CSEA, letter of support for Assem. Bill No. 597 (1969 Reg. Sess.) to Assem. Com. on Education; Crandall, letter to Governor Reagan, July 24, 1969.) The subsequent proposed amendments to section 45196 also pertained to sick leave, not vacation leave. (Sen. Bill No. 1613 (1997–1998 Reg. Sess.); Assem. Bill No. 365 (2001–2002 Reg. Sess.); Assem. Bill No. 1802 (2001–2002 Reg. Sess.).)

The Attorney General opinions, which predated section 45196's enactment and involved different statutes and practices, are not pertinent to its interpretation. (29 Ops.Cal.Atty.Gen. 62, 63 (1957); 38 Ops.Cal.Atty.Gen. 23 (1961); 40 Ops.Cal.Atty.Gen. 1 (1962).) The 1970 Attorney General opinion cited by Colton (53 Ops.Cal.Atty.Gen. 111 (1970)) is also not dispositive because it did not involve classified employees, vacation leave, and the application of the 100-day rule authorized by section 45196—the issues in this case. Similarly, Colton's reliance on cases interpreting the analogous former section 44977 for certificated employees is not persuasive because those cases involved sick leave, not vacation leave, and again do not address the 100-day rule of section 45196. (*Lute v. Governing Board* (1988) 202 Cal.App.3d 1177, 1181–1183 [249 Cal.Rptr. 161], citing *Napa Valley Educators' Assn. v. Napa Valley Unified School Dist.* (1987) 194 Cal.App.3d 243, 250–253 [239 Cal.Rptr. 395].)

Finally, articles 12.2.8 and 12.7.6 of the collective bargaining agreement do not support Colton's argument. The agreement calls for "coordination" of workers' compensation benefits, sick leave, vacation leave, and differential leave to provide an employee with full pay for as long as possible. As an arbitrator who reviewed the collective bargaining agreement concluded, "the Collective Bargaining language [is] other than clear and unambiguous. It is not clear, from simply reading the language, exactly what the District's function is when it '*coordinates*' the use of various leaves." But there is no contractual agreement about whether the various leaves are to be consecutive or concurrent.

Article 12.7.6 provides: "When entitlement for industrial accident or illness leave has been exhausted (60 days), the District will coordinate the following: [¶] a. Temporary Disability; [¶] b. Sick Leave; [¶] c. Vacation (See 12.2.8); [¶] d. Long-Term Illness Leave (100-day half-pay benefit) keeping the employee in a full-pay status with benefits as long as accumulated benefits allow. (Education Code 44044)."

Concerning use of vacation for sick leave, article 12.2.8 provides: "A unit member may use accumulated vacation time as sick leave upon written request to, and with . . . approval . . . . [¶] For unit members who accumulate vacation time, the District will coordinate a unit member's accumulated earned vacation time with the half-time sick leave benefit to keep the unit member in a full pay status until all vacation is exhausted. A unit member may choose not to coordinate their vacation time with the half-time sick leave benefit, if a written request is made to Payroll seven (7) days before the end of the current pay period."

Neither article 12.2.8 nor article 12.7.6 expressly discusses whether vacation leave and differential leave are to be deducted concurrently. Meanwhile, section 45196 requires sick leave and differential leave to be combined but vacation leave is deemed to be exclusive of differential leave. If vacation leave is treated exclusively, it could increase the leave time with full pay to an injured employee depending on the amount of the employee's leave balances.

Because Colton's practice of combining vacation leave and differential leave concurrently is not a subject of agreement under the collective bargaining agreement and because it contradicts section 45196, it cannot be validated by this court. (*Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 285–286 [52 Cal.Rptr.2d 115, 914 P.2d 193].) Haynes's statutory rights as a classified employee prevail over the provisions of the collective bargaining agreement. (*Tracy Educators Assn. v. Superior Court* (2002) 96 Cal.App.4th 530, 539 [116 Cal.Rptr.2d 916]; *California School Employees Assn. v. Travis Unified School Dist., supra*, 156 Cal.App.3d at pp. 248–250.)

### 4.   Disposition

Although we acknowledge there is some merit in Colton's contention that differential leave should be combined with both sick leave and vacation leave to afford a minimum of 100 days of leave to an injured employee, the plain language of section 45196 convinces us that is not the present state of the law.

We affirm the judgment. Petitioners, as the prevailing parties, shall recover their costs on appeal.

King, J., concurred.

**RAMIREZ, P. J.,** Concurring.—Today we hold that the parties' long-standing, agreed-upon method for calculating and coordinating classified employee differential leave and vacation leave is invalid under California law.

I reluctantly agree with this conclusion based on the clear and plain meaning of Education Code section 45196. However, I write separately to underscore the unfortunate plight of the Colton Joint Unified School District and school board (collectively, Colton) and other school districts that must now adjust their longtime and well-settled practices for calculating differential and vacation leave times. More to the point, I wish to emphasize that, in these uncertain economic times, Colton and other school districts are left to face the budgetary and administrative consequences of our decision. If there is to be any remedy to this unexpected and unfortunate situation, it lies with the Legislature.

With the agreement of the California School Employees Association (CSEA), Colton has for more than 20 years coordinated differential leave with both sick and vacation leave, as set forth in article 12.7.6 of the collective bargaining agreement. The purpose of this negotiated arrangement was to benefit employees by allowing sick or injured employees to collect their full pay, rather than merely the 50 percent pay provided by differential leave, for as long as their accumulated benefits would allow. The 100 days of differential leave was intended by the parties to be a safety net for employees with insufficient sick and vacation leave time. The parties did not bargain for the 100 days to be a minimum guarantee for those employees fortunate enough to have banked extended amounts of vacation time. The method for calculating leave time, for which Colton argues in this appeal, is the one contemplated and agreed to by both parties over the years, and is the method that Colton has executed and crafted its budget around for the past two decades. Colton and other school districts must now depart from this long-accepted practice because, as we recognize here today, the Legislature saw fit to draft section 45196 in such a way as to preclude school districts and employee representatives from working together freely to balance its costs and benefits.

The result of our decision here today is that differential leave is no longer merely a safety net. Rather, the 100 days is now a *minimum* amount of time that Colton must provide full or partial pay for a sick or injured employee. This is even before considering whether the employee has additional hours of paid vacation time they may use to extend their paid leave beyond the 100 days.

I agree with counsel for Colton that, especially in these difficult budgetary years, school districts and their local bargaining units are in the best position to control costs by negotiating for specific benefits and calculation of leaves

in their agreements.[1] However, the Legislature has for whatever reason chosen to require that vacation leave and differential leave run consecutively ("exclusively" in Ed. Code, § 45196), thereby extending differential leave beyond 100 days for many employees. We hold here today that the Legislature has effectively, but perhaps unwisely, prohibited school districts and employees from bargaining over coordination of vacation benefits with the 100-day differential leave. Perhaps now the Legislature would care to bring some common sense back into the law on this subject by returning these decisions to the place they belong—the bargaining table.

As a consequence, I reluctantly agree with my colleagues that we must set aside over two decades' worth of collective bargaining history and leave calculation practice because they directly conflict with the clear and plain language of Education Code section 45196. Therefore, I must concur with both the reasoning and result of this opinion.

A petition for a rehearing was denied February 17, 2009, and appellants' petition for review by the Supreme Court was denied April 29, 2009, S171097.

---

[1] On pages 23 and 25 of Colton's opening brief, Colton quotes from the veto messages of Governors Wilson and Davis, respectively, regarding bills intended to amend Education Code section 45196 to be more consistent with CSEA's position in this appeal. Both governors stressed that extended sick leave and differential leave benefits are issues better dealt with at the bargaining table than by the Legislature. Governor Davis wisely commented, "I am concerned that this bill may cause a significant increase in costs for local school . . . districts . . . . Therefore, I believe that this extended sick leave benefit is better dealt with through collective bargaining. In the bargaining process experienced negotiators can find savings to offset and balance out the cost."